[Cite as *Jones v. Norwood*, 2013-Ohio-350.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| FARRIS JONES, | : | APPEAL NO. C-120237 |
| | | TRIAL NO. A-1009426 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| CITY OF NORWOOD, | : | |
| | | |
| GERRY STOKER, in his individual capacity and in his official capacity as Building Commissioner of the city of Norwood, | : | |
| | : | |
| and | : | |
| | : | |
| DAVID LEWIS, Sergeant, city of Norwood Police Department, in his individual capacity, | : | |
| | : | |
| Defendants-Appellants, | : | |
| and | : | |
| JOHN DOES 1-5, | : | |
| Defendants. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed from is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: February 6, 2013

*Mark Lawson, Brian Howe, Legal Aid Society of Southwest Ohio, LLC, O'Hara, Ruberg, Taylor, Sloan & Sergent*, and *Michael O'Hara,* for Plaintiff-Appellee,

*Schroeder, Maundress, Barbiere & Powers, Lawrence E. Barbiere*, and *Christopher S. Brown*, Norwood Assistant Law Director, for Defendants-Appellants.

**CUNNINGHAM, Judge.**

{¶1}    Defendants, the city of Norwood, Ohio, Norwood's Building Commissioner Gerry Stoker, and Norwood Police Sergeant David Lewis, appeal from the trial court's order  (1) denying in part their motion for summary judgment on plaintiff Farris Jones's federal claims for substantive- and procedural-due-process violations brought under 42 U.S.C. 1983, and her state law claims for the intentional infliction of emotional distress and negligence, and (2) granting partial summary judgment to Jones on her claim that the city of Norwood violated her procedural-due-process rights.

{¶2}    Jones brought this action seeking money damages and injunctive and declaratory relief after the city of Norwood and its agents ordered her to vacate within hours, due to "overcrowding," the one-bedroom apartment that she shared with another individual.  The defendants moved for summary judgment in part on the basis of state and federal immunity.  For the reasons that follow, we affirm in part and reverse in part the trial court's order.

## I. Background Facts and Procedural History

{¶3}    Jones began renting the one-bedroom apartment located on the third-floor of the building at 2000 Maple Avenue in Norwood, Ohio, in 2008, with the assistance of a full subsidy from the Talbert House through its Shelter Care Voucher Program.  The rental occupancy certificate for the unit allowed four residents.  Although Jones was the only individual named in the lease agreement, beginning in 2009, she began to share her apartment with Matt Waller.  They did not share the bedroom; one of them slept on the floor in the "spacious" living room on a makeshift-bed comprised of blankets and pillows.

{¶4} Prior to the incident that is the basis of the lawsuit, defendant Lewis, a sergeant with the Norwood Police Department, was familiar with both Jones and Waller because of frequent police runs made to the apartment building for issues such as public intoxication, drug use, unsanitary conditions, and unruliness. According to Jones, Lewis had threatened to have her housing voucher removed.

{¶5} Defendant Stoker, as the Building Commissioner of Norwood, was the head of the Norwood Building Department. The building department was responsible for enforcing the Norwood Building Code and the International Property Maintenance Code ("IMPC"), which it had adopted as its own property maintenance code.

{¶6} Both Stoker and Lewis were active in Norwood's Keep Our Properties Safe ("KOPS") program, a collaborative effort amongst the Norwood Building, Police, Fire and Health Departments. One of the goals of KOPS was to proactively address issues of blight and nuisance properties in the city.

{¶7} Members of KOPS met three times a month to coordinate team inspections of properties throughout the city of Norwood. As part of KOPS, the police department compiled addresses of properties it deemed problem properties and in need of inspection, and forwarded those to Stoker, as well as to an official at the health department. Sergeant Lewis was the police liaison for KOPS, and reported to Stoker. Stoker reported to the mayor of Norwood on KOPS.

{¶8} On October 6, 2010, at about 11 a.m., Commissioner Stoker and Sergeant Lewis, together with representatives from Norwood's Building, Health, Fire, and Police Departments ("the KOPS group"), visited 2000 Maple Avenue pursuant to the KOPS program. The property maintenance inspectors from the building department on the visit included Charles Russ and James Shelby. Prior to

the inspection, the building department had received complaints about the property from neighbors and the caretaker, and the police department had included the property on its list of problem properties based on the number of police runs to the building.

{¶9} After arriving at the apartment building, the building department representatives issued "notices of intent to vacate for overcrowding" to occupants of several lower-level units. These notices required the occupants to vacate by 5 p.m. that same day and provided no opportunity to cure the "overcrowding."

{¶10} The KOPS group then approached Jones's unit on the third floor. Jones's unit, like all of the apartments in the building, has two doors: a "back door" that enters into the kitchen area, and a "front door" that enters into the living room area. They knocked on Jones's back door. When no one responded, they knocked on the front door.

{¶11} When Jones and Waller answered the door, Stoker and Lewis asked them about their sleeping arrangement. According to Jones, Lewis specifically asked if she and Waller were "sexually" active. This upset Jones.

{¶12} After determining that Jones and Waller were not sharing the same bedroom and Waller would not voluntarily move out, Stoker decided to cite Jones and Waller for "overcrowding."

{¶13} Russ completed a "notice of intent to vacate" form and checked the box indicating a violation of IPMC 2006 Section 404.5 He handwrote on the order "NOTICE OF INTENT TO VACATE ON OR ABOUT 10-6-10@ 5:00P.M," "FOR OVERCROWDING" and "NO PERSON'S [sic] TO OCCUPY PROPERTY AFTER 5:00 P.M." Although the form used by the building department includes a section for the city to offer the recipient an opportunity to cure overcrowding by reducing

5

occupancy by a set amount, Russ had crossed out that provision. The form did not include any information advising Jones of a right to appeal.

{¶14} The IPMC 2006 Section 404.5 defined "overcrowding" based on the square footage of the bedroom. The guidelines indicated 70 square feet for the first person in a bedroom and an additional 50 square feet for each additional person.[1]

{¶15} Sergeant Lewis, Stoker, and Russ testified in their depositions that Waller had pushed aside blankets and pillows when he answered the door. Jones claimed that the blankets were at least six feet from the door. Russ and Stoker believed they were closer, but everyone agreed that the distance was a minimum several feet, and that the makeshift bed was made of blankets and pillows, which were easily removed.

{¶16} In his deposition, Russ testified that the placement of the blankets and pillows near the door was a safety concern and an additional reason why he issued the intent to vacate. But Russ did not indicate on the notice of intent to vacate a violation of Norwood's Property Maintenance Code 702.1, which applies when the main exit or egress is blocked. And Jones testified in her deposition that no one had mentioned the blankets by the door or told her that they were a safety concern.

{¶17} Although Jones had initially refused to sign the standard form providing the building department officials consent for an inspection, later she had orally invited them into the apartment. With the exception of Russ, who briefly stepped about five feet into the unit before issuing orders, no one from the group

---

[1] The 2009 version of the IPMC dealing with "overcrowding" provides that "[t]he number of persons occupying a dwelling unit shall not create conditions that, in the opinion of the code official, endanger the life, health, safety or welfare of the occupants." At his deposition, Russ stated that Norwood had not begun to use the 2009 version until 2011.

entered or inspected the apartment. Thus, no one measured the apartment or checked to see if the back door was obstructed.

{¶18}   Jones and Waller refused to sign the "intent to vacate order" or to accept it, so Russ left it on the front door of the apartment unit. Lewis and Stoker told Jones and Waller that if they did not leave by 5 p.m. that same day, then they could be arrested. Jones recalled in her deposition that Stoker had said, "If you're not out of here by 5:00, if we think that you're in your apartment, we're going to bust down your door and take you both to jail for criminal trespassing." Lewis, backing him up, had said, "Yeah, we will be back." Jones and Waller left and spent the next two nights in a hotel.

{¶19}   The next day, October 7, 2010, Russ, Shelby, and a police officer returned to the property and posted the actual order to vacate on the front door of the unit. This document retroactively ordered the occupants to vacate "by 5:00 p.m. on Wednesday October 6, 2010."

{¶20}   The document informed Jones and Waller that the structure was ordered vacated under the authority of Norwood Codified Ordinances 1331.13(a) for (1) the "[f]ailure to maintain the property in accordance with the provisions of the Norwood Codified Ordinances 1305.08 (Rental Certificates and Certificates of Use and Occupancy)" and (2) "violations, and safety issues of the Norwood Property Maintenance Code Section 1305.14 and I.P.M.C. 2006 Property Maintenance Code." The retroactive order also contained information about the appeal process. Several Norwood officials, including Stoker and the mayor, were copied on the order to vacate document.

{¶21}  At the same time, Russ and Shelby also posted a large placard on the front and back doors warning individuals not to "occupy" the unit and that they would be penalized if they did so.

{¶22}  Meanwhile, after vacating the apartment on October 6 based on the threat of criminal charges, Jones contacted a lawyer at the Legal Aid Society of Greater Cincinnati ("Legal Aid"), Jessica Powell.  Powell averred that she had communicated with the city's law department about the propriety of the "intent to vacate order" and had received assurances from the city's assistant law director that the city would not enforce the order and that Jones and Waller would not be arrested for returning to the apartment.  Powell relayed this information to Jones.  Based on that assurance, Jones and Waller returned to the apartment on October 8, 2010. Upon their arrival, they saw the additional documents ordering them to vacate or face criminal prosecution.  Jones called Legal Aid again, and Powell again contacted the city's law department and was again reassured that the city would not enforce the vacate orders.

{¶23}  Jones presented evidence that Stoker and Lewis returned to her apartment on additional occasions in October.  She claimed that they had returned together on or about October 13, 2010.  On that date, they banged on her door and told her that she and Waller needed to leave.  She recalled also that Lewis returned to the apartment building later in October on a police run.  When he saw Jones, he said, "It's not over.  You think you're gonna be here long.  You're not going to be in this apartment long."

{¶24}  On October 14, 2010, Jones and Waller filed this multiple-claim lawsuit against the city of Norwood; Stoker, in his individual capacity and in his

official capacity as the Norwood Building Commissioner;[2] Sergeant Lewis in his individual capacity, and John Does 1-5. Jones and Waller then sought and were granted a temporary restraining order and a preliminary injunction against the defendants. The court rescinded the vacate orders, ordered the city and its employees to provide Jones and Waller unfettered access to their apartment, and restrained the city of Norwood and its employees from ordering Jones and Waller to vacate the apartment and from "threatening" Jones and Waller "with criminal prosecution and/or arrest for peacefully being in their home."

{¶25} Jones moved out of the apartment in January 2011 and into another apartment with Waller where the Talbert House pays her portion of the rent. She did not appeal the vacate order administratively. Waller subsequently dismissed all claims against the defendants.

{¶26} The defendants moved for summary judgment on all claims in the amended complaint. In addition to attacking the merits of Jones's claims, they asserted immunity under state and federal law. Specifically, the city of Norwood alleged Ohio's political-subdivision immunity from the state law claims. Stoker, in his individual and official capacity, and Lewis, in his individual capacity, alleged Ohio's political-subdivision-employee immunity from the state-law claims and federal qualified immunity from the federal constitutional claims.

{¶27} Jones subsequently dismissed the Fair Housing Act, Ohio Civil Rights and Equal Protection based claims, leaving only the 42 U.S.C. 1983 claims and the state claims for negligence and the intentional infliction of emotional distress. Jones then moved for partial summary judgment on her claim for municipal liability

---

[2] Jones and Waller added the claims against Stoker "acting in his official capacity as the Building Commissioner" in an amended complaint.

against Norwood and Stoker in his official capacity based on a procedural-due-process violation. She argued that the undisputed facts demonstrated the violation of her procedural-due-process rights, and the city's responsibility for that unconstitutional action, because the deprivation was committed by a government actor pursuant to a custom or policy and the act was committed by the final policymaker for the governmental entity.

{¶28} The trial court granted summary judgment to the city on the state-law claims on the basis of the political-subdivision immunity set forth in R.C. Chapter 2744. The court otherwise denied the defendants' motion.

{¶29} The trial court granted partial summary judgment to Jones on her 42 U.S.C. 1983 claim against the municipality based on the violation of her procedural-due-process rights, finding that Jones had established a procedural-due-process violation but that a genuine issue of material fact remained as to the city's liability for the violation.[3]

## II. Assignments of Error

{¶30} In two assignments of error, the city, Commissioner Stoker, and Sergeant Lewis now argue that the trial court erred (1) by not granting summary judgment to Stoker and Lewis on the state and federal claims, and (2) by granting partial summary judgment to Jones upon finding a procedural-due-process violation.

---

[3] In its judgment entry, but not in its decision, the court granted summary judgment to Jones against Stoker in his *individual capacity* on the procedural-due-process claim. Jones, however, had moved for summary judgment against Stoker in his official capacity, which had the legal significance of a claim against the municipality, for which qualified immunity did not apply. Stoker does not purport to appeal that judgment except to the extent that he was denied qualified immunity.

## A. Jurisdiction

**{¶31}** We first address our jurisdiction in this interlocutory appeal. The denial of a motion for summary judgment is generally not a final, appealable order. *Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 9. But "[w]hen a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Id.* at syllabus. Likewise, "[a]n order denying a motion for summary judgment in which an employee of a political subdivision sought immunity from claims brought under Section 1983, Title 42, U.S. Code is a final, appealable order pursuant to R.C. 2744.02(C)." *Summerville v. City of Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522. In this case, the trial court denied Stoker and Lewis the benefit of an alleged immunity. Thus, this court has jurisdiction over the interlocutory appeal, even in the absence of a Civ.R. 54(B) certification, to review the trial court's order denying the defendants the benefit of the alleged state and federal immunity.

**{¶32}** The defendants additionally ask this court to review the propriety of the trial court's order denying summary judgment on the merits of the federal and state claims and the trial court's disposition of Jones's motion for summary judgment on the procedural-due-process claim against the city. But the order appealed is not otherwise final, and, therefore, this court's jurisdiction in this appeal, arising under R.C. 2744.02(C), is limited to the review of the trial court's denial of the benefit of immunity. *See, e.g., Leasure v. Adena Local School Dist.*, 2012-Ohio-3071, 973 N.E.2d 810, 822 (4th Dist.) (holding that when appealing a denial of immunity under R.C. 2744.02(C), and the order is not otherwise final and

appealable, a party may not raise other alleged errors concerning the denial of summary judgment.) *See also Inwood Village, Ltd. v. City of Cincinnati*, 1st Dist. No. C-110117, 2011-Ohio-6632, ¶ 7 (noting that dismissal of plaintiffs' appeal from the trial court's entry dismissing their contract claims was proper because the appeal had not been taken from the order denying the political subdivision the benefit of an alleged immunity).

{¶33} Nonetheless, application of the qualified-immunity analysis requires some determination of the state of the constitutional law at the time of the alleged state action. Thus, our jurisdiction includes the authority to resolve these issues concerning the federal claims to the extent that is necessary to resolve the claim of qualified immunity. Our jurisdiction does not extend to issues raised by Stoker and Lewis concerning the merits of the state-law claims.

### B. Standard of Review

{¶34} We review the grant or denial of summary judgment de novo, applying the standards set forth in Civ.R. 56. *See Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). To obtain summary judgment, the movant must demonstrate that (1) there is no genuine issue of material fact; (2) the movant is entitled to judgment as a matter of law; (3) and it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmovant, and that conclusion is adverse to the nonmovant. *Id.* We first address Stoker's and Lewis's argument that the trial court erred by failing to grant them summary judgment on the grounds of state and federal immunity.

### III. State Law Immunity

{¶35}    Jones's complaint contains state-law claims for the intentional infliction of emotional distress and negligence against Stoker, individually, and in his official capacity as Norwood Building Commissioner, and Lewis, individually.  We begin by clarifying the legal significance of Jones naming Stoker as a defendant in his individual capacity and in his official capacity.

{¶36}    Generally, making allegations against a named officeholder of a political subdivision in his official capacity is the equivalent of suing the political subdivision.  *See Lambert v. Clancy, Hamilton Cty. Clerk of Courts*, 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585.   Here, Jones not only made allegations against the building department, she clarified that she was suing Stoker in his official capacity as the head of the building department, and in his individual capacity for his personal involvement in the dispute.  Thus, the allegations against Commissioner Stoker in his official capacity involve municipal liability.  Conversely, the allegations against Commissioner Stoker in his individual capacity involve his personal liability.

{¶37}    We make this distinction because the appropriate R.C. Chapter 2744 immunity analysis depends on whether the officerholder defendant is sued in his official capacity or in his individual capacity. *Lambert* at ¶ 10.  The analysis set forth in R.C. 2744.02—political-subdivision-immunity analysis—applies when the named defendant officerholder of a political subdivision is sued in his official capacity.  The analysis set forth in R.C. 2744.03(A)(6) applies to certain employees of political subdivisions.

{¶38}    In moving for summary judgment on the basis of immunity, Stoker, in his official capacity and in his individual capacity, urged the trial court to grant immunity under the analysis set forth in R.C. 2744.03(A)(6).  The trial court denied

13

summary judgment to Stoker in his official capacity on the state-law claims using the R.C. 2744.03(A)(6) analysis as erroneously urged by Stoker. Conversely, the trial court granted summary judgment to the city on the state-law claims applying the political-subdivision-immunity analysis set forth in R.C. 2744.02. Jones rightfully conceded that the city was entitled to summary judgment on those claims on the basis of immunity. Because Jones's claims against Stoker in his official capacity were claims against the city, and the city is entitled to immunity from liability from those state-law claims, we conclude that the trial court erred by denying summary judgment to Stoker in his official capacity on the state-law claims.

{¶39} The employee-immunity provision of R.C 2744.03(A)(6) governs whether Stoker or Lewis are individually immune from liability for Jones's two remaining state-law claims—negligence and the intentional infliction of emotional distress. With respect to both Stoker and Lewis, this statute provides for immunity unless (a) their "acts or omissions were manifestly outside the scope of [their] employment or official responsibilities;" (b) their "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;" or (c) a section of the Revised Code expressly imposed civil liability on them. R.C. 2744.03(A)(6)(a)-(c).

{¶40} Jones concedes that the actions of Stoker and Lewis were not manifestly outside the scope of their employment or official responsibilities, and the evidence submitted on summary judgment demonstrates only that they were acting within the scope of their employment and official responsibilities when they committed the allegedly tortious acts. Therefore, the first exception to immunity does not apply in this case.

{¶41}   Likewise, there is no evidence that a section of the Revised Code expressly imposes civil liability on either of the individual defendants.

{¶42}   The crux of the dispute, therefore, is whether the exception for malicious, bad faith, and wanton or reckless acts or omissions set forth in R.C. 2744.03(A)(6)(b) applies.  "Malicious purpose" is the willful and intentional design to injure or harm another, generally seriously, through unlawful or unjustified conduct.  *See, e.g.*, *Chaney v. Norwood*, 189 Ohio App.3d 124, 2010-Ohio-3434, 937 N.E.2d 634, ¶ 11; *Cook v. City of Cincinnati*, 103 Ohio App.3d 80, 90, 658 N.E.2d 814 (1st Dist.1995). "Bad faith" evinces a "dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." *Cook* at  90-91.

{¶43}   "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Anderson v. City of Massillon*, ____ Ohio St.3d ____, 2012-Ohio-5711, ____ N.E.2d ____ (2012), paragraph three of the syllabus, approving and following *Hawkins v. Ivy*, 50 Ohio St.2d 114, 363 N.E.2d 367 (1977).   On the other hand, "[r]eckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another which is unreasonable under the circumstances and substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus, adopting 2 Restatement of the Law 2d, Torts, Section 500 (1965).

{¶44}   Stoker and Lewis argue that the exception in R.C. 2744.03(A)(6)(b) cannot apply as a matter of law to claims of negligence.  Jones did not address this part of Stoker's and Lewis's motion for summary judgment, and she has failed to

15

address the issue on appeal. Moreover, her bare-bones claim for negligence did not allege any more than Stoker and Lewis "negligently performed their duty to [Jones.]"

{¶45} We agree with Stoker and Lewis that the exception to immunity for political-subdivision employees set forth in R.C. 2744.03(A)(6)(b) does not reach these allegations of merely negligent conduct. *See Anderson* at ¶ 23. Because none of the other exceptions to immunity for political-subdivision employees apply to Jones's negligence claim against Stoker and Lewis in their individual capacities, they are entitled to immunity on that claim. Thus, the trial court erred by denying summary judgment to them on the negligence claim.

{¶46} Conversely, the exception to immunity for political-subdivision employees set forth in R.C. 2744.03(A)(6)(b) does apply to Jones's intentional infliction-of-emotional-distress claim. To prevail on this exception to immunity, Jones must show that Stoker and Lewis willfully harmed her, were motivated by a dishonest purpose in breaching a duty owed to her, acted with no care whatsoever, or that their actions were indifferent to a known or obvious risk of harm under the circumstances. *See* R.C. 2744.03(A)(6)(b).

{¶47} In support of her intentional-infliction-of-emotional-distress claim, Jones presented evidence that Stoker, as building commissioner, and Lewis, as the Norwood police department's liaison to KOPS, were involved in the decision to target Jones's apartment building and to issue the equivalent of an immediate vacate order on October 6, 2010, even if the emergency order was not supported under the law. Further, she presented evidence that both Stoker and Lewis had threatened to return and arrest her if she did not comply with the October 6, 2010 order, and that at least Lewis knew she was living in the unit with the assistance of a voucher from a social services agency. Jones also presented evidence that Stoker and Lewis harassed her

about the vacate order after her lawyer had received assurances from the city that she could stay.

{¶48} We conclude that whether Stoker acted in a wanton or reckless manner, acted in bad faith, and/or acted with malicious purpose is a material issue of genuine fact that remains in dispute, a finding that would deprive Stoker, in his individual capacity, of his statutory immunity. We arrive at the same conclusion with respect to Lewis. Accordingly, we affirm the trial court's denial of summary judgment on the basis of immunity to Stoker and Lewis in their individual capacities on the intentional-infliction-of-emotional-distress claim.

{¶49} Stoker and Lewis additionally argue that Jones failed to establish that she suffered "emotional distress," and, therefore, the trial court erred by failing to grant summary judgment to them on this claim on that basis. As we noted in discussing our jurisdiction in this appeal, this issue is beyond the scope of our interlocutory appeal on the issue of immunity. Accordingly, we do not address that issue.

## IV. Federal Qualified Immunity

{¶50} Stoker and Lewis as individual defendants argue that they are entitled to the protection of qualified immunity because they were acting with discretionary authority at the time of the allegations. Stoker's and Lewis's immunity to the 42 U.S.C. 1983 claims is an issue of federal law. *Cook*, 103 Ohio App.3d at 85, 658 N.E.2d 814.

{¶51} The doctrine of federal qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d

396 (1982); *Summerville v. City of Forest Park*, 195 Ohio App.3d 13, 2011-Ohio-3457, 958 N.E.2d 625, ¶ 17 (1st Dist.) We are mindful that while immunity generally applies, "[w]hen government officials abuse their offices," a civil action for damages may supply the sole means "for vindication of constitutional guarantees." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), quoting *Harlow* at 814.

{¶52} Once the government official has presented facts that suggest he was performing a discretionary function during the incident, the plaintiff bears the burden of presenting evidence to meet a two-part test. The plaintiff must show: (1) the violation of a constitutional right, and (2) that the right at issue was "clearly established" at the time of defendant's misconduct such that a reasonable official acting with the same knowledge would understand that his actions violate that right. *See Summerville* at ¶ 18.

{¶53} The trial court, and this court, may address these tests in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009), modifying the procedure for resolving claims of qualified immunity mandated in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

{¶54} Because it is undisputed that Stoker and Lewis were acting within the scope of their discretionary authority as building commissioner and police sergeant, respectively, when the alleged constitutional violations occurred, we begin our review of the trial court's denial of qualified immunity by determining whether the facts shown, when viewed in the light most favorable to Jones, demonstrate that the actions of each of the individual defendants violated Jones's clearly established due-process rights.

18

## A. Procedural Due Process

## 1. Stoker

{¶55} The trial court determined that Stoker violated Jones's Fourteenth Amendment right to procedural due process when, in the absence of exigent circumstances, he required Jones to vacate without a predeprivation hearing.

{¶56} The Due Process Clause of the Fourteenth Amendment guarantees that "no State shall deprive * * * any person of life, liberty, or property, without due process of law." Fourteenth Amendment to the U.S. Constitution. The concept of procedural due process constrains governmental-decision making that deprives individuals of liberty or property interests protected by the Due Process Clause. *See Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The requirements of due process are flexible, but at a minimum, the Due Process Clause requires meaningful process at a meaningful time, as determined by a balancing of the competing interests involved. *See id.*

{¶57} To succeed on a procedural-due-process claim, a plaintiff must establish a constitutionally protected property or liberty interest and show that such an interest was deprived without appropriate process. *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *LRL Properties v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1108 (6th Cir.1995).

## a. Jones had a Protected Property Interest

{¶58} Jones's procedural-due-process claim depends on her having a protected property or liberty interest. She claims a protected property interest in her leasehold estate. The United States Constitution does not create property interests. *Bd. of Regents* at 577. Instead, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state

law." *Id; Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir.2002). Under Ohio law, tenants holding leasehold estates have a recognized property interest. *See* R.C. 5321.01 and R.C. 5321.04; *Carroll Weir Funeral Home v. Miller*, 2 Ohio St.2d 189, 191, 207 N.E.2d 747 (1965). Thus, we conclude, as the trial court did, that Jones had a recognized property interest for Fourteenth Amendment purposes.

### b. Preeviction Hearing

{¶59} Possessory interests in property invoke the protections of procedural due process. *Fuentes v. Shevin*, 407 U.S. 67, 87, 92 S.Ct. 1983, 32 L.E.2d 556 (1972). This legal conclusion is "well-established." *Thomas* at 576. Generally, due process requires notice and a hearing prior to an eviction, which affects a significant property interest. *See id.*; *Flatford v. City of Monroe*, 17 F.3d 162, 167 (6th Cir.1994), citing *Fuentes*.

{¶60} There are rare exceptions to the requirement of a hearing prior to an eviction. "A prior hearing is not constitutionally required where there is a special need for very prompt action to secure an important public interest and where a government official is responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in a particular instance." *Flatford* at 167, citing *Fuentes* at 91.

{¶61} Stoker argued that the order was authorized under Norwood Building Code 1331.12, which allows for "Emergency Measures." That section provides:

> Vacating Structures. When the Code Official determines that there is actual and immediate risk of failure or collapse of a building or structure or any part thereof or the existence of defective equipment or service facilities such as to endanger life or health, or when any structure or part of structure has fallen or

failed and use or occupancy of the structure, equipment, service facility and/or equipment or part thereof would, in his opinion, endanger life or health or where there is a particularly hazardous use of the building or structure such as to endanger life or health, the Code Official is hereby authorized and empowered to order and require the occupants and tenants to vacate the same forthwith, and/or to immediately cease, and refrain from use or operation of the building * * * or part thereof which is deemed dangerous. The Code Official shall placard the building, structure or premise in accordance with the procedures of Section 1331.10.

{¶62} While this section allows the code official to issue an emergency vacate order under exigent circumstances, including "where there is a particularly hazardous use of the building or structure such as to endanger life or health," for such an emergency order to pass constitutional muster, the circumstances must require "very prompt action" to secure an important public or governmental interest. *See Flatford*, 17 F.3d 162, 167, citing *Fuentes*, 407 U.S. at 91, 92 S.Ct. 1983, 32 L.Ed.2d 556. In this case, the trial court found that as a matter of law, no exigent circumstances existed such that a reasonable code official would have declared an emergency.

{¶63} Stoker argues that a reasonable building inspector could have concluded that there was a "safety" threat where he observed a makeshift bed placed near the front door and Jones refused to reduce the number of occupants in the apartment unit. In support, he cites *Flatford v. City of Monroe*, 17 F.3d 162 (6th Cir.1994).

{¶64} In *Flatford*, a building inspector issued an emergency vacate order after observing exposed electrical wiring and nonfunctioning smoke detectors in a wooden-framed structure occupied by families with children. The Sixth Circuit Court of Appeals held that the plaintiffs' evidence failed to prove that a reasonable building inspector under those circumstances could not conclude that the condition of the structure posed an immediate threat to the safety of its occupants. *See Sell v. City of Columbus*, 127 Fed.Appx. 754 (6th Cir.2005) (upholding judgment for code enforcement officer on claim alleging emergency vacate order violated procedural due process rights where evidence supported a finding that a code enforcement officer could have reasonably concluded that the unsanitary conditions in a home occupied by two ill elderly residents, with 33 dogs and four birds on or about the premises, posed an immediate threat to health and safety of the occupants); *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412 (3d Cir.2008) (upholding summary judgment for town in property owner's 42 U.S.C. 1983 action alleging the violation of procedural-due-process rights when town condemned apartment complex without a predeprivation hearing, where competent evidence supported a reasonable belief that the serious mold infestation in the complex presented an emergency).

{¶65} Jones argues that the circumstances in this case did not raise any safety concern, much less the serious and imminent safety concern at issue in *Flatford*. She maintains that Stoker ordered her to vacate under the pretext of a code violation and that the circumstances did not warrant immediate action.

{¶66} In analyzing Stoker's decision to issue the same-day eviction, we look to whether the record contains evidence that a reasonable building commissioner could have concluded that the condition of the apartment posed an immediate threat

to the safety of its occupants. *Flatford* at 168. It is undisputed that Stoker, in his supervisory role, issued the vacate order knowing that Jones had two doors to the apartment. Further, the evidence demonstrates that the makeshift bed, consisting of blankets and pillows, did not prevent the occupants from easily opening the door and exiting the apartment. Finally, the evidence demonstrated that none of the building department officials measured the size of the bedroom to determine whether the "overcrowding" guidelines were violated. Even if we deem this a reasonable mistake by the building official, no reasonable official could have believed that the occupancy of two individuals in a one-bedroom apartment approved for four occupants warranted an *emergency order* to vacate. Therefore, Jones established her right to a preeviction hearing, a hearing that undisputedly did not occur.

### c. "Suitable Postdeprivation Remedy"

{¶67}   Stoker argues also that Jones's right to appeal the vacate order after the eviction satisfied the Due Process Clause, citing *Parratt v. Taylor*, 451 U.S. 527, 538, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). This argument is premised upon his prior argument that the planned inspection revealed exigent circumstances that justified the deprivation of property. But we have rejected Stoker's claim that a reasonable building commissioner could have found exigent circumstances under these facts. Thus, the existence of postdeprivation remedies is "irrelevant." *Leslie v. Lacy*, 91 F.Supp.2d 1182, 1188 (S.D.Ohio 2000). *See Elsmere Park Club,* 542 F.3d at 417.

{¶68}   Apart from only minimal notice to leave, Stoker provided Jones with no due process before the eviction. Jones vacated the apartment immediately, and she did not return for two days. Because the record does not contain facts from

which a reasonable building commissioner could conclude that the occupants might be imminently endangered, and the law clearly established Jones's right to a predeprivation hearing absent those exigent circumstances, we hold that Stoker was not entitled to summary judgment on his claim of qualified immunity from the procedural-due-process claim.

### 2. Lewis

{¶69} In this case, it was sufficiently clear at the time of the eviction that Jones was entitled to a predeprivation hearing in the absence of exigent circumstances. We have held that the necessary exigent circumstances did not exist. But whether exigent circumstances actually justified the same-day eviction does not resolve the question of Lewis's qualified immunity. *Flatford*, 17 F.3d at 170.

{¶70} Generally, police officers are given "wide latitude to rely on a building-safety official's expertise where that expert determination has some basis in fact." *Id.* But, "[i]f there are suspicious circumstances which would lead a reasonable officer to scrutinize whether an inspector's actions are wholly arbitrary, then reliance upon the inspector's judgment should not shield officers who act unreasonably. Similarly, officers should not be immune if there is affirmative evidence that the officers actually knew that the city official was * * * fabricating a story * * *." *Id.* at fn. 9.

{¶71} In this case, the evidence presented, when viewed in the light most favorable to Jones, demonstrated that Lewis knew or had sufficient reason to believe that Stoker issued the emergency vacate order without legal justification. Lewis was the police liaison for the KOPS program and he was involved in the decision to inspect Jones's apartment unit. Further, he participated in the same-day eviction of the occupants of the lower-level apartment units in the building and Jones's unit for

"overcrowding." In his deposition, Lewis could not identify any reason why it was imperative for Jones to leave that day. In sum, the record contains evidence to support Jones's theory that Stoker had made the determination to issue the emergency vacate order before the "inspection" and that Lewis was aware of this plan.

{¶72} The record in this case contains some evidence that Lewis acted with knowledge that Stoker had not based the emergency vacate order on exigent circumstances. For this reason, Lewis was not entitled to summary judgment on his claim of qualified immunity.

## B. Substantive Due Process

{¶73} Jones cannot avoid Stoker's and Lewis's claim of qualified immunity with respect to the substantive-due-process claim unless the facts shown, when viewed in the light most favorable to her, demonstrate that their actions violated a clearly established substantive-due-process right.

{¶74} The United States Supreme Court has noted that the contours of the due-process clause "guarantee more than fair process and * * * cover a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." (Internal citation and quotations omitted.) *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.E.2d 1043 (1998).

{¶75} With respect to the substantive-due-process claim, Jones's amended complaint stated, in part, as follows:

> Defendants are state actors and acted under color of state law as to
> the matters set forth above with the intent to deprive Plaintiff[] of

[her] constitutional right to due process and opportunity to be heard before being denied a protected property interest.

Plaintiff[] ha[s] a significant property interest in continued residency at [her] rental home which is subject to the requirement of due process.

Defendants' acts and omissions as stated above deprived Plaintiff[] of [her] significant property interest in continued residency in the rental home * * * .

{¶76} Jones essentially argued that the acts and omissions that deprived her of property without procedural due process also violated her Fourteenth Amendment substantive-due-process rights because Stoker's and Lewis's actions were an arbitrary and capricious abuse of power and they lacked a rational basis for the deprivation. The trial court determined that genuine issues of material fact on this issue precluded summary judgment.

{¶77} Stoker and Lewis argue that substantive-due-process claims are limited to claims involving the violation of protected liberty interests only, and not merely the deprivation of a property interest, which is protected by procedural due process. They argue also that there is no separate substantive-due-process right at issue, citing *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The *Albright* court held that "where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular source of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.' " *Id.*

{¶78} Jones argues that substantive due process protects property interests as well as liberty interests. In support, Jones cites *EJS Properties, LLC v. City of*

*Toledo*, 698 F.3d 845 (6th Cir.2012).  In that case, involving a zoning decision, the Sixth Circuit reiterated that substantive due process mandates that " 'state legislative and administrative actions depriving the citizen of life, liberty, or *property* must have some rational basis.' " (Emphasis added.) *Id.* at 862, quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1223 (6th Cir.1992).

{¶79}   We decline to elaborate on the scope of the protections afforded by the substantive component, as opposed to procedural component, of the due process clause, except to hold that Jones's reliance on the former in this case is misplaced. She alleged only the deprivation of a property right, not the deprivation of a "fundamental right" protected by the substantive component of the Due Process Cause.

{¶80}   "The Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).  "The categories of substance and procedure are distinct." *Id.*  As Justice Powell explained, "[n]ot every [property ] right is entitled to the protection of substantive due process.  While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive-due-process rights are created only by the Constitution*."* (Internal citation omitted.) *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, J., concurring separately).  *See Charles v. Baesler*, 910 F.2d 1349, 1354 (6th Cir.1990).

{¶81}   The question, then, is whether Jones's interest asserted here—her continued residency in her rented apartment—"bears a resemblance to the fundamental interests that previously have been viewed as implicitly protected by the

Constitution." *Ewing* at 229. Jones's interest, boiled down to its essence, is a state-law contract right. While this property right is very important, Jones has established only that she has this property right—not that it is a fundamental right. Because Jones has not demonstrated a substantive fundamental right to continued residency in her rented apartment, we conclude that Stoker and Lewis were entitled to qualified immunity on the substantive-due-process-based 42 U.S.C. 1983 claim.

### V. Partial Summary Judgment for Jones

{¶82} In its second assignment of error, the city argues that the trial court erred by granting partial summary judgment to Jones. Jones moved for summary judgment against the city and Stoker in his official capacity on count four of the complaint, the 42 U.S.C. 1983 claim, based on a procedural-due-process violation. The trial court held that Jones had established a due-process violation, and it granted summary judgment to Jones on that portion of her procedural-due-process-based 42 U.S.C. 1983 claim against the municipality.

{¶83} We addressed the issue of the due-process violation to the extent necessary to resolve the issue of qualified immunity, consistent with the scope of our jurisdiction. In the context of the qualified-immunity analysis, we affirmed the trial court's determination that Jones had shown the violation of her clearly established procedural-due-process right to a predeprivation hearing. In accordance with this holding, we overrule the second assignment of error.

### VI. Conclusion

{¶84} Upon our determination that issues of fact remain as to whether, for purposes of the immunity afforded under R.C. 2744.03(A)(6), Stoker's and Lewis's conduct was wanton, willful, in bad faith, or reckless, we affirm the trial court's denial of summary judgment to those employee defendants on their claim of state-

law immunity. We reverse the trial court's denial of summary judgment to Stoker, in his official capacity, on his claim of state-law immunity, upon our determination that the political-subdivision-immunity analysis applies and that no issue of material fact remains as to Norwood's immunity.

{¶85} Additionally, we affirm the trial court's denial of summary judgment to Stoker on his claim of qualified immunity, upon our determination that the record contains evidence that he violated Jones's clearly established procedural-due-process rights when, in the absence of exigent circumstances, he authorized the issuance and enforcement of an emergency vacate order. Likewise, upon our determination that the record contains some evidence supporting a finding that Lewis knew that Stoker was issuing the emergency vacate order in violation of Jones's procedural-due-process rights, we affirm the trial court's denial of summary judgment to Lewis on his claim of qualified immunity.

Judgment affirmed in part, reversed in part, and cause remanded.

**SUNDERMANN, P.J.,** and **HENDON, J.**, concur.

J. HOWARD SUNDERMANN**,** retired, from the First Appellate District, sitting by assignment.

Please note:

The court has recorded its own entry on the date of the release of this opinion.