[Cite as *Stakich v. Russo*, 2019-Ohio-1237.]

# THE COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### CUYAHOGA COUNTY

### STEVEN STAKICH,

Plaintiff-Appellee,

v.

### NANCY MARGARET RUSSO ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 106779**

---

Civil Appeal from the
Court of Common Pleas of Cuyahoga County, Ohio
Case No. CV 11-753281

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb,
Judges of the Seventh District Court of Appeals Sitting by Assignment.

---

**JUDGMENT:**
Reversed
Summary Judgment for Appellant Vincent Scalmato

---

*Atty. Robert C. Marcis*, 22649 Lorain Road, Fairview Park, Ohio 44126, for Plaintiff-Appellee, and
*Atty. Michael C. O'Malley*, Prosecuting Attorney and *Atty. Dale F. Pelsozy,* Assistant Prosecuting Attorney, Cuyahoga County Prosecutor's Office, Justice Center, Courts

Tower, 1200 Ontario Street, 8th Floor, Cleveland, Ohio 44113, and *Atty. Robert P. Ducatman* and *Atty. Lisa B. Gates,* Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114, for Defendants-Appellants.

Dated:
April 4, 2019

**DONOFRIO, J.**

{¶1} Defendant-appellant, Vincent Scalmato, appeals the judgment of the Cuyahoga County Common Pleas Court denying his motion for summary judgment. Appellant argues the trial court erred in denying him immunity and holding that there were genuine issues of material fact on plaintiff-appellee's, Steven Stakich's, claims of malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, and abuse of process.

{¶2} In September and October of 2009, Judge Nancy Russo of the Cuyahoga County Common Pleas Court contacted the Cuyahoga County Sheriff's Office (CCSO) to report a man who was potentially stalking her. Judge Russo provided a description of the alleged perpetrator and told deputies that the man was shouting the words "the judge must die" outside of her home.

{¶3} On November 14, 2009, appellee was walking in Judge Russo's neighborhood, listening to his Walkman and singing along to songs. Appellee walked by Judge Russo's home while he was singing. Believing appellee was the person who was stalking her in September and October of 2009, Judge Russo's husband then followed appellee to his apartment building, and Judge Russo contacted CCSO and informed them that appellee was the person who was making threats outside of her home.

{¶4} CCSO assigned appellant, then a CCSO deputy, to investigate the November 14, 2009 allegation. Appellant was informed about the September and October 2009 threats made outside of Judge Russo's home. Appellant then went to Judge Russo's home to interview her and her husband on November 15, 2009. At the interview, Judge Russo picked Hayes Rowan out of a photo line-up.

{¶5} Judge Russo's husband informed appellant that he followed the man to an apartment building in Lakewood, Ohio. That same day, appellant went to the apartment

Case No. 18 CA 106779

building to investigate. Appellant reviewed security camera footage of the man Judge Russo's husband followed entering the building. The apartment building's staff identified the man as appellee. Appellant also showed the staff Rowan's photograph. Rowan was unfamiliar to the apartment staff. Later that day, appellant placed Rowan under arrest for making the alleged threats. Rowan was later released.

{¶6} The next day, November 16, 2009, appellant returned to appellee's apartment building to continue his investigation. The facts about how appellant entered appellee's apartment are in dispute. Appellant's police report indicates that appellee invited him in. Appellee, however, stated in his deposition that appellant hit him in the face with the door upon entering his apartment.

{¶7} Appellant asked appellee questions about the alleged threats made outside of Judge Russo's home. Appellee denied knowing Judge Russo and denied shouting "the judge must die" outside of her home. But appellee admitted to knowing where Judge Russo lived and to being in Judge Russo's neighborhood for a walk on November 14, 2009. Appellee informed appellant that he sings along to songs while on his walks. Appellant arrested appellee and placed him in the Cuyahoga County Jail.

{¶8} Appellant presented the facts of the case to Victor Perez at the Cleveland Law Department for prosecution. After reviewing reports and evidence with appellant and other deputies from the CCSO, Perez decided not to bring criminal charges against appellee.

{¶9} The day after Perez declined to prosecute appellee's case, the Cuyahoga County Prosecutor's Office presented three menacing by stalking felonies to a grand jury. Appellant was the sole witness to testify before the grand jury. Appellant testified that appellee was walking in Judge Russo's neighborhood and singing along to songs that could be perceived as threatening. The grand jury ultimately indicted appellee on all charges.

{¶10} After the indictment, the state moved to dismiss the charges in exchange for a civil protection order in favor of Judge Russo against appellee. The trial court granted the motion, signed the protection order over appellee's objection, and dismissed the criminal charges.

Case No. 18 CA 106779

{¶11} Appellee brought this action against Judge Russo, Cuyahoga County, and appellant, both in his individual capacity and as a deputy of the CCSO. Against appellant individually, appellee asserted claims of malicious prosecution, intentional infliction of emotion distress, negligent infliction of emotional distress, and abuse of process.

{¶12} In his individual capacity, appellant filed a motion for summary judgment. Appellant argued that there was no genuine issue of material fact concerning any of appellee's claims. Additionally, appellant argued that he was entitled to immunity for two reasons. First, as a CCSO deputy, appellant was performing a governmental function when he investigated and arrested appellee for menacing by stalking. Second, as some of appellee's claims were premised on appellant's grand jury testimony, appellant argued he was entitled to absolute immunity for his grand jury testimony.

{¶13} Appellee's response to summary judgment argued that appellant's testimony before the grand jury was completely contrary to the CCSO's own records and previous investigations into Judge Russo's stalking complaints. Appellee argued that appellant's contradictory testimony qualified as reckless conduct, which rendered immunity inapplicable.

{¶14} On January 10, 2018, the trial court denied appellant's motion for summary judgment in its entirety. With regard to immunity, the trial court held that sufficient evidence was presented to show that an exception to appellant's immunity applied. The trial court also held that there were genuine issues of material fact concerning all of appellee's claims. Appellant timely filed this appeal on January 30, 2018. Appellant now raises five assignments of error.

{¶15} As appellant's first and second assignments of error both address the issue of immunity, we will address them together. Appellant's first assignment of error states:

> THE COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANT SCALMATO ON THE ISSUE OF IMMUNITY.

{¶16} Appellant's second assignment of error states:

> DEFENDANT SCALMATO IS IMMUNE FROM CIVIL LIABILITY.

Case No. 18 CA 106779

{¶17} Appellant argues that the trial court should have granted his motion for summary judgment based on immunity.

{¶18} An appellate court reviews a trial court's summary judgment decision de novo, applying the same standard used by the trial court. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 5. A motion for summary judgment is properly granted if the court, upon viewing the evidence in a light most favorable to the nonmoving party, determines that: (1) there are no genuine issues as to any material facts; (2) the movant is entitled to judgment as a matter of law, and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ.R. 56(C); *Byrd v. Smith*, 110 Ohio St. 3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10.

{¶19} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). The trial court's decision must be based upon "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Civ.R. 56(C). The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. *Id.* at 293.

{¶20} Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.,* 104 Ohio App.3d, 598, 603, 662 N.E.2d 1088 (8th Dist. 1995), citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶21} At all times relevant, appellant was a CCSO deputy and therefore an employee of a political subdivision pursuant to R.C. 2744.01(B). Employees of political subdivisions will generally be immune from liability. R.C. 2744.03(A)(6). But employees of political subdivisions are not entitled to immunity if: (a) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) the employee's acts or omissions were with malicious purpose, in bad

faith, or in a wanton or reckless manner; or (c) civil liability is expressly imposed upon the employee by a section of the Revised Code. R.C. 2744.03(A)(6)(a)-(c).

**{¶22}** Appellant and appellee agree that the relevant immunity exception in this case is R.C. 2744.03(A)(6)(b). Whether R.C. 274403(A)(6)(b) applies is generally a question of fact. See *Hardesty v. Alcantra*, 8th Dist. No. 102684, 2015-Ohio-4591, ¶ 49 *see also Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 15.

**{¶23}** Malicious purpose is defined as "the willful and intentional design to injure or harm another, generally seriously, through unlawful or unjustified conduct." *Jones v. Norwood*, 1st Dist. No. C-120237, 2013-Ohio-350, ¶ 42. Bad faith is defined as "evincing a 'dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another.' " *Id.*, quoting *Cook v. Cincinnati*, 103 Ohio App.3d 80, 90–91, 658 N.E.2d 814 (1st Dist.1995).

**{¶24}** Wanton misconduct is defined as "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 33. Reckless conduct is defined as "the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at ¶ 34.

**{¶25}** Appellant cites portions of Cleveland City Prosecutor Vincent Perez's testimony. Perez testified that, after he informed appellant of his decision to not prosecute appellee, appellant accepted Perez's decision and "quietly went away." (Perez Dep. 16-17). According to Perez, appellant agreed that there was insufficient evidence to prosecute appellee. (Perez Dep. 17). Perez did not notice any malicious intent in appellant. (Perez Dep. 17). Perez concluded that appellant seemed like a deputy sheriff who was doing his job. (Perez Dep. 18).

**{¶26}** Appellant also cites appellee's deposition testimony. Appellee testified that he "would expect" it was a deputy's job to carry out a warrant. (Stakich Dep. 70). Appellee admitted that the mistake in identity in this case was made by Judge Russo. (Stakich Dep. 71). Appellee agreed that he matched a description given by the judge and was walking past her house singing loudly. (Stakich Dep. 72-73). Appellee also agreed that the CCSO

was given a complaint, which they investigated, and that is ultimately the CCSO's responsibility. (Stakich Dep. 73).

**{¶27}** In response, appellee cites portions of appellant's deposition. Appellant reviewed numerous documents from the CCSO related to the stalking investigation of Judge Russo prior to testifying before the grand jury. (Scalmato Dep. 32). In reports dated September 4, 2009, September 8, 2009, and September 10, 2009, deputies from the CCSO identified Hayes Rowan as a potential suspect. (Scalmato Dep. Ex. A-C).

**{¶28}** On November 15, 2009, Judge Russo contacted the CCSO and reported that a man walked passed her home on November 14, 2009 and said, in a loud voice, "she has a price on her head." (Scalmato Dep. Ex. E). When appellant was assigned to investigate the November 14, 2009 incident, he was verbally informed of the details regarding the September and October incidents. (Scalmato Dep. 30-31).

**{¶29}** Appellant then went to talk to Judge Russo and her husband about the November 14, 2009 incident. Judge Russo informed appellant that, on November 14, 2009, a white man approximately five feet ten inches in height and approximately 180 pounds walked passed her house in dark clothing and sunglasses shouting "she has a price on her head" while walking in a "militaristic fashion." (Scalmato Dep. Ex. D). Appellee matched this description. (Stakich Dep. 72-73). Judge Russo told appellant that the voice she heard shouting on November 14, 2009 was the same voice from the September and October of 2009 incidents. (Scalmato Dep. Ex. D). Judge Russo's husband followed this person to an apartment building in Lakewood, Ohio. (Scalmato Dep. Ex. D).

**{¶30}** During his investigation on November 15, 2009, appellant located Rowan who admitted that he was "only a few blocks" from Judge Russo's home on November 14, 2009. (Scalmato Dep. Ex. D). Rowan gave appellant the impression that he was being deceitful due to nervous behavior and inconsistencies in his story. (Scalmato Dep. Ex. D). Judge Russo positively identified Rowan out of a photo lineup as her stalker. (Scalmato Dep Ex. D). Appellant then took Rowan into custody pending an investigation. (Scalmato Dep. Ex. D).

**{¶31}** Appellant continued to investigate the threats by going to the Lakewood apartment building where Judge Russo's husband followed a potential suspect and requesting security camera footage from November 14, 2009. (Scalmato Dep. Ex. G).

Case No. 18 CA 106779

Two staff members from the apartment building played the security footage from the date and time appellant requested. (Scalmato Dep. Ex. G). During that time period, only one person entered the building. (Scalmato Dep. Ex. G). The building's staff members identified that person as appellee. (Scalmato Dep. Ex. G). Appellant also witnessed Judge Russo's husband's car on the security footage at the same time appellee entered the building. (Scalmato Dep. Ex. G).

{¶32} On November 16, 2009, appellant returned to appellee's apartment building. According to appellant, appellee invited appellant into his apartment to interview him. (Scalmato Dep. Ex. G). According to appellee, appellant hit him in the head with the door upon entering the apartment. (Stakich Dep. 124). Appellee admitted to knowing where Judge Russo lived and frequently walking around her neighborhood. (Scalmato Dep. Ex. G). Appellee also stated that he sings loudly to songs while on his walks including a song with lyrics such as "there is a price on your head." (Scalmato Dep. Ex. G).

{¶33} Appellee gave appellant a statement detailing his normal walking path, which takes him by Judge Russo's home. (Scalmato Dep. Ex. I). While walking, appellee uses his Walkman and listens to music loudly. (Scalmato Dep. Ex. I). Appellee also admitted to singing to a song with the lyric "your picture's in the paper, there's a price on your head." (Scalmato Dep. Ex. I).

{¶34} As for appellant's grand jury testimony, he testified about the alleged stalking incidents outside of Judge Russo's home in September and October of 2009. (Grand Jury Tr. 3-4). After those incidents, investigating officers did not arrest anyone for the threats. (Grand Jury Tr. 3-4). As for the November 14, 2009 incident, appellant testified that Judge Russo reported a man marched past her house in a militaristic fashion while chanting. (Grand Jury Tr. 4). Appellant interviewed Judge Russo who provided him with a description that matched appellee. (Grand Jury Tr. 5). While in custody, appellee admitted that his walks take him to Judge Russo's neighborhood. (Grand Jury Tr. 6). Appellant also testified that appellee admitted the songs he sings could be perceived as threatening. (Grand Jury Tr. 7).

{¶35} Based on this evidence, it cannot be said that appellant acted maliciously, in bad faith, wantonly, or recklessly when he investigated and arrested appellee or when

he testified before the grand jury. When appellant began investigating the November 14, 2009 incident, he was made aware that there were previous threats made against Judge Russo. Judge Russo's husband followed the potential suspect to an apartment building. When appellant investigated the apartment building, he learned that appellee was the person Judge Russo's husband followed. After interviewing appellee, appellant learned that appellee knew where Judge Russo lived and frequently walked through her neighborhood while singling loudly to songs that could be interpreted as threatening. Moreover, appellant's testimony before the grand jury was consistent with the facts of the case. Ultimately, appellant had probable cause to investigate and arrest appellee for the threats made outside of Judge Russo's home.

{¶36} Because appellant did not act maliciously, in bad faith, wantonly, or recklessly, the trial court should have granted his motion for summary judgment on the basis of immunity.

{¶37} Accordingly, appellant's first and second assignments of error have merit and are sustained.

{¶38} Appellant's third assignment of error states:

PLAINTIFF HAS NOT STATED A CLAIM FOR ABUSE OF PROCESS AGAINST THE SHERIFF OR THE DEPUTY.

{¶39} Appellant's fourth assignment of error states:

PLAINTIFF HAS NOT STATED A CLAIM FOR INTENTION[A]L OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

{¶40} Appellant's fifth assignment of error states:

APPELLEE HAS NOT STATED A CASE FOR MALICIOUS PROSECUTION.

{¶41} Based on our resolution of appellant's first and second assignments of error, appellant's third, fourth, and fifth assignments of error are moot.

Case No. 18 CA 106779

**{¶42}** For the reasons stated above, the trial court's judgment is hereby reversed and summary judgment is entered in favor of appellant on the basis of immunity.

Waite, P. J., concurs.

Robb, J., concurs.

---

For the reasons stated in the Opinion rendered herein, Appellant's first and second assignments of error have merit and are sustained. Appellant's third, fourth and fifth assignments of error are moot. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Cuyahoga County, Ohio, is reversed. Summary judgment is entered in favor of Appellant, Vincent Scalmato. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**