[Cite as *Moore v. Cleveland*, 2017-Ohio-1156.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 104466, 104471, 104527, and 104529**

# JOANNE MOORE, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# CITY OF CLEVELAND, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
AFFIRMED IN PART;
REVERSED IN PART; REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CV-10-743088, CV-10-743232, CV-10-743235,
CV-10-743237, and CV-11-764319

**BEFORE:** S. Gallagher, J., Keough, A.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 30, 2017

**ATTORNEYS FOR APPELLANTS**

**For Joanne Moore, et al.**

Jeffrey H. Friedman
Friedman, Domiano & Smith Co., L.P.A.
55 Public Square, Suite 1055
Cleveland, Ohio   44113

Terry H. Gilbert
Friedman & Gilbert
55 Public Square, Suite 1055
Cleveland, Ohio   44113

**For Florence Bray**

Sara Gedeon
David B. Malik
David B. Malik Co., L.P.A.
8437 Mayfield Road, Suite 101
Chesterland, Ohio   44026

**For Gladys Wade and Latundra Billups**

Blake A. Dickson
Mark D. Tolles
The Dickson Firm, L.L.C.
Enterprise Place, Suite 420
3401 Enterprise Parkway
Cleveland, Ohio   44122

Daniel Z. Inscore
3 North Main Street, Suite 703
Mansfield, Ohio   44902-1740

**ATTORNEYS FOR APPELLEES**

**For the City of Cleveland, et al.**

Barbara A. Langhenry
City of Cleveland
Director of Law
By:   Gary S. Singletary
Chief Counsel
City of Cleveland Law Department, Room 106
601 Lakeside Avenue
Cleveland, Ohio   44114

Michael C. O'Malley
Cuyahoga County Prosecutor
By:   Barbara R. Marburger
Assistant Prosecuting Attorney
Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

**For Georgia Hussein, et al.**

Joseph F. Scott
815 Superior Avenue E., Suite 1325
Cleveland, Ohio   44114

SEAN C. GALLAGHER, J.:

**{¶1}** In this consolidated appeal, we review the trial court's decision to grant summary judgment in favor of defendants-appellees on the basis of immunity for employees of a political subdivision. Upon review, we reverse the decision of the trial court only as to Detective Georgia Hussein. We affirm the decision in favor of the other appellees.

**BACKGROUND**

**{¶2}** The four companion cases involved in this appeal were consolidated in the trial court and were decided by the same summary judgment ruling. Separate appeals were filed in each case. After appellate briefs were filed, this court consolidated the cases for oral argument and disposition on appeal.[1]

**{¶3}** The cases involve allegations against four named city of Cleveland police officers, who are the appellees herein — Lieutenant Michael Baumiller, Sergeant Antoinette McMahan,[2] Detective Georgia Hussein, and Detective Kristin Rayburn — regarding their actions surrounding the arrest, investigation, and release of Anthony Sowell in December 2008.[3]

---

[1] This court consolidated the cases on appeal after briefing was filed in each case. We have reviewed all the briefs that were filed, thoroughly reviewed the record before us, and considered all the arguments presented.

[2] It appears in the record that the name of Sgt. McMahan is often misspelled as "McMahon."

[3] The complaints also included allegations against the city of Cleveland, Assistant Prosecuting Attorney Lorraine Coyne, and others. This court previously upheld the trial court's decision to grant Coyne's motion for judgment on the pleadings and the dismissal of the claims against her, upon finding she was entitled to absolute immunity. *Moore v. Cleveland*, 8th Dist. Cuyahoga No. 100069,

**{¶4}** The underlying facts are succinctly set forth in the trial court's decision, as follows:

FACTS

On December 8, 2008, Gladys Wade ran up to a police car and reported that Anthony Sowell punched and choked her, tried to rip off her clothes and kill her. The police arrested Sowell on suspicion that he attempted to kidnap, rob and rape Wade.

Arresting officers created an Incident Report which included mention of Wade's clothing retrieved from the premises, a pattern of footprints observed in the yard around Sowell's residence indicative of a struggle, blood droplets located on the wall and steps inside the residence, a broken window leading to the third floor apartment, and broken glass and discarded women's clothing and panties found in a trash can on the premises.

The incident was referred to the Sex Crimes and Child Abuse Unit on December 9, 2008. Defendants Lieutenant Michael Baumiller and/or Sergeant Antoinette McMahan assigned the investigation to Detective Georgia Hussein. On December 9, 2008, while Sowell was in custody, Hussein interviewed Wade, took her statement and attempted to search Sowell's residence. She did not obtain a search warrant to search the premises. Hussein then interviewed witnesses at establishments where Wade went on the day of the incident. On December 10, 2008, Hussein interviewed Sowell. Detective Kristin Rayburn took photographs of Wade and Sowell.

Upon completing her investigation on December 10, 2008, Hussein conferred with Assistant City Prosecutor Lorraine Coyne to review Wade's allegations. Having determined that Wade was robbed and not sexually assaulted, Hussein did not inform Coyne that Sowell was a convicted sex offender because she did not think that Sowell's criminal background or status as a registered sex offender was relevant. Prior to meeting with Coyne, Hussein had neither conducted a review of the crime scene nor

---

2014-Ohio-1426, ¶ 33. The city of Cleveland was dismissed from the action without prejudice. We note that R.C. 2744.07(A)(2) provides for employee indemnification by a political subdivision when certain conditions are met.

reviewed the Incident Report created by the arresting patrol officers. Hussein did not present Coyne with any crime scene evidence. In total, Hussein presented Coyne with the Incident Report, the statements of Wade and Sowell, her personal opinion of Wade's credibility, and an affidavit for the charge of robbery.

Coyne subsequently determined that Sowell would not be charged and Hussein submitted a Final Disposition Receipt on December 10, 2008 at 4:00 PM authorizing Sowell's release. (Claims against [Lorraine] Coyne were previously dismissed on separate motion.) Later that evening, Hussein visited Sowell's residence and noticed broken glass on the door. Despite this visit, no additional information was reported to Coyne or anyone else. On December 11, 2008, Defendant McMahan reviewed and approved Hussein's investigation of the incident.

In October 2009, Cleveland Police investigated an incident involving a naked woman falling from a window of Sowell's residence. The police obtained a search warrant for Sowell's residence and discovered human remains in and around his home. Sowell was subsequently arrested on October 31, 2009 and charged. On July 22, 2011, a jury convicted Sowell of multiple counts of aggravated murder, attempted murder, rape, kidnapping and other offenses. The jury verdict also included findings of guilt related to the kidnapping, attempted murder, attempted rape and felonious assault of Wade.

## CONSOLIDATED COMPLAINTS

Claims made in the Consolidated Complaints allege that individual Defendants Rayburn, Baumiller, McMahan and Hussein were grossly negligent, willful, wanton and reckless in the discharge of their duties by releasing Sowell after his arrest on December 8, 2008. Plaintiffs further claim that Defendants negligently inflicted extreme emotional distress upon Plaintiffs. Plaintiffs each seek relief in the form of monetary damages for their loss and/or injury, review of policies related to investigations of alleged sex crimes, attorney fees and punitive damages.

Defendants deny liability and move[d] for summary judgment based upon governmental immunity pursuant to R. C. 2744 et seq. Defendants also deny liability based upon the public-duty rule.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**{¶5}** The record reflects that in their motion for summary judgment, which was filed December 8, 2014, appellees sought immunity under R.C. 2744.03(A)(6). Appellees claimed that "[e]ach of the Defendants is immune under R.C. 2744.03(A)(6) and has no liability in these cases as a matter of law as they did not violate any duty owed to Plaintiffs and/or Plaintiffs' decedents."

**{¶6}** Contrary to the trial court's statement, appellees did not rely upon the public-duty rule. In fact, they specifically indicated in their motion that they were "not invoking the public duty rule." They have reiterated this on appeal and agree that the public-duty rule does not apply in this case. There is no dispute that the public-duty rule does not apply with respect to the R.C. 2744.03(A)(6)(b) exception to immunity for wanton and reckless conduct. *Estate of Graves v. Circleville*, 124 Ohio St.3d 339, 2010-Ohio-168, 922 N.E.2d 201, ¶ 20-22.

**{¶7}** Instead, appellees asserted in their motion for summary judgment that they remained protected by traditional tort concepts of duty. They argued that in the absence of a special relationship with Sowell, the Cleveland police defendants had no duty with regard to the third-party criminal acts of Sowell following his release from custody. Further, appellees maintained that in the absence of a legal duty, political subdivision employees are insulated from liability even when allegations of wanton and reckless conduct are raised in the context of R.C. 2744.03(A)(6)(b).

**TRIAL COURT'S SUMMARY JUDGMENT RULING**

**{¶8}** In granting summary judgment in favor of appellees, the trial court recognized that the public-duty rule is inapplicable. However, the trial court found a duty to exist and determined that "Revised Code Chapter 2744 *et seq.* imposes upon government employees the duty not to discharge or omit to discharge their duties with malicious purpose, in bad faith, or in a wanton or reckless manner. *See, R.C. 2744.03(A)(6)(b).*"

**{¶9}** The trial court proceeded to address the R.C. 2744.03(A)(6)(b) exception to immunity for employees of a political subdivision. The trial court found that "[p]laintiffs have failed to produce evidence displaying malicious purpose or bad faith on the part of the Defendants in carrying out their investigative duties. There is nothing in the record indicating that any of the Defendants wanted to see harm result to any of the Plaintiffs."

**{¶10}** The trial court also found that "the record is also devoid of evidence displaying any wanton misconduct or recklessness." The trial court found from its review of the record that "the Defendants did not fail to 'exercise any care whatsoever' and consequently did not discharge their duties in a wanton manner." The trial court further recognized that "[t]he involvement of the supervisory Defendants was limited to Lt. Baumiller and/or Sgt. McMahan assigning the matter to a detective and the subsequent review and approval of Hussein's investigation by Sgt. McMahan[,]" that "[t]he entire involvement of Rayburn appears to be limited to taking photographs of Sowell on two occasions[,]" and that "Hussein's conduct does not legally rise to the level of recklessness * * *."

{¶11} Plaintiffs-appellants have appealed the trial court's ruling. All of the assignments of error relate to the trial court's decision to grant summary judgment.

## STANDARD OF REVIEW AND
## POLITICAL-SUBDIVISION EMPLOYEE IMMUNITY

{¶12} We review the grant of summary judgment on the issue of immunity de novo using the standard set forth in Civ.R. 56. *Argabrite v. Neer*, Slip Opinion No. 2016-Ohio-8374, ¶ 14. Summary judgment is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a matter of law, and, [3] viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*

{¶13} R.C. Chapter 2744 governs political subdivision tort liability. R.C. 2744.03(A) prescribes the defenses or immunities that a political-subdivision employee may assert to establish nonliability in a civil action for damages allegedly caused by an act or omission in connection with a governmental or proprietary function. *Argabrite* at ¶ 7. As applicable in this matter, R.C. 2744.03(A)(6)(b) provides that an employee of a political subdivision is immune from liability unless "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" This section applies to law-enforcement officers the same as it applies to other employees of political subdivisions. *Argabrite* at ¶ 7. However, we shall "bear in mind that while many public employees face the potential for liability under R.C. 2744.03, no other public employee faces the potential danger, violence or unique statutory responsibilities a law-enforcement officer faces." *Id.* at ¶ 15.

**{¶14}** "Malicious purpose" has been defined as "the willful and intentional design to injure or harm another, generally seriously, through unlawful or unjustified conduct." *Jones v. Norwood*, 1st Dist. Hamilton No. C-120237, 2013-Ohio-350, ¶ 42. "Bad faith" has been defined as "evincing a 'dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another.'" *Id.*, quoting *Cook v. Cincinnati*, 103 Ohio App.3d 80, 90-91, 658 N.E.2d 814 (1st Dist.1995).

**{¶15}** The Ohio Supreme Court has defined the terms "wanton misconduct" and "reckless conduct" as follows:

> This court has defined "wanton misconduct" as "the failure to exercise *any* care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." (Emphasis added.) *Anderson* [*v. Massillon*], 134 Ohio St. 3d 380, 2012-Ohio-5711, 983 N.E.2d 266, at paragraph three of the syllabus. And we have defined "reckless conduct" as conduct "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id*. at paragraph four of the syllabus. *These are rigorous standards that will in most circumstances be difficult to establish* * * *.*

(Emphasis added.) *Argabrite,* Slip Opinion No. 2016-Ohio-8374, at ¶ 8.

{¶16} We recognize that whether an employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner is generally a question of fact for the jury. *See Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 1994-Ohio-368, 639 N.E.2d 31. However, whether an employee of a political subdivision is entitled to immunity under R.C. 2744.03(A)(6) remains a question of law to be determined by the court. *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 1992-Ohio-133, 595 N.E.2d 862. Thus, upon our review, "we must determine whether, based on the evidence in the record, reasonable minds could conclude that any of the officers acted 'with malicious purpose, in bad faith, or in a wanton or reckless manner' so as to preclude immunity." *Argabrite* at ¶ 15.

**ANALYSIS**

**Duty**

{¶17} The focus of appellees' immunity argument is their claim that they remain insulated from liability in the context of R.C. 2744.03(A)(6)(b), in the absence of a legal duty.[4] Appellees point to the *Estate of Graves* decision in which the Ohio Supreme Court stated that "[t]he absence of the public-duty rule will not automatically result in the creation of new duties and new causes of action" and that "[i]f a claimant cannot establish the existence of a duty, the political subdivision's employee is insulated from liability even in the face of allegations of wanton and reckless conduct." *Estate of Graves*, 124 Ohio St.3d 339, 2010-Ohio-168, 922 N.E.2d 201, at ¶ 25.

---

[4]    We note that appellees assert the absence of a duty as an alternative basis

**{¶18}** Appellees maintain that the existence of a legal duty must be established using conventional tort principles. They cite to *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, in which the Ohio Supreme Court stated that "[a] state defendant, just like any private defendant, remains protected by traditional tort concepts of duty, including foreseeability and pertinent public-policy considerations." ¶ 38. In discussing the existence of a legal duty using conventional tort principles, the court stated the following:

> "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff." *Commerce & Industry Ins. Co.* [*v. Toledo* (1989)], 45 Ohio St.3d [96,] 98, 543 N.E.2d 1188; see, also, *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 217, 556 N.E.2d 505. This court has often stated that the existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 680, 693 N.E.2d 271; *Commerce & Industry*, 45 Ohio St.3d at 98, 543 N.E.2d 1188; *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 472 N.E.2d 707. In addition, we have also stated that the duty element of negligence may be established by common law, by legislative enactment, or by the particular circumstances of a given case. *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 565, 697 N.E.2d 198; *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, paragraph one of the syllabus. Admittedly, however, the concept of duty in negligence law is at times an elusive one.

*Wallace* at ¶ 23.

---

to uphold the trial court's decision. A cross-appeal was not required to be filed. *See* App.R. 3(C)(2); R.C. 2505.22; *Parton v. Weilnau*, 169 Ohio St. 145, 170-171, 158 N.E.2d 719 (1959).

{¶19} In *Wallace*, the court recognized the requirement of a "special relation" in certain actions. The court stated that "our tort law already requires a special relationship in order to satisfy the duty element in certain types of negligence actions, such as actions based on failure to act or failure to control the conduct of a third person." *Id*. at ¶ 38. The Ohio Supreme Court also has recognized that although "the existence of a duty depends on the foreseeability of the injury[,]" there remains "no duty under Ohio law to control the conduct of another person so as to prevent him from causing physical harm to another unless a 'special relation' exists[.]" *Littleton v. Good Samaritan Hosp. & Health Ctr.*, 39 Ohio St.3d 86, 92, 529 N.E.2d 449 (1988). "Such a 'special relation' exists when one takes charge of a person whom he knows or should know is likely to cause bodily harm to others if not controlled." *Id*., citing 2 Restatement of the Law 2d, Torts, Section 319 (1965).

{¶20} Appellees claim that they remain protected by traditional tort concepts and that there is no common-law duty to anticipate or foresee criminal activity. They claim that in the absence of a "special relationship," they cannot be held liable for the third-party criminal acts of Sowell. They cite to *Bush v. Ashland Cty.*, 5th Dist. Ashland No. 09-CA-25, 2010-Ohio-1732, in which the court found that "[i]n the absence of this special relationship, a defendant cannot be held liable for failing to exercise control over the actions of a third party so as to protect others from harm." *Id*. at ¶ 33 (finding no legal duty to protect individuals from crimes of a third party absent a custodial situation). They also cite to *Clemets v. Heston*, 20 Ohio App.3d 132, 485 N.E.2d 287 (6th

Dist.1985), in which the court recognized that "special relations do not extend infinitely" and that the special relation between the custodial officer and prisoner terminated when the arrestee-prisoner was free to leave. *Id*. at 138 (involving duty owed to the released prisoner).

{¶21} We recognize that the cases cited regarding "duty" by the opposing parties to this appeal are distinguishable from the case at hand. Furthermore, the Ohio Supreme Court has not addressed traditional tort concepts of "duty" in the context of the immunity analysis under R.C. 2744.03(A)(6)(b), nor has the issue been before it.

{¶22} In *Argabrite*, the Ohio Supreme Court recognized that law-enforcement officers have a statutory duty "to arrest and detain a person who is violating the law, R.C. 2935.03(A)(1)," and may face "potential criminal liability for negligently failing to do so, R.C. 2921.44(A)(2)." *Argabrite*, Slip Opinion No. 2016-Ohio-8374, at ¶ 8, 15. However, the court was not presented with the issue of whether traditional tort concepts involving duty are to be considered when conducting the immunity analysis under R.C. 2744.03(A)(6). Although duty is an element of a tort claim, the law is silent as to the relation of "duty" to the immunity analysis. We believe this is an issue that should be considered by the Ohio Supreme Court.

{¶23} In *Argabrite*, the Ohio Supreme Court indicated that when immunity is asserted under R.C. 2744.03(A)(6), a court must analyze the case under the immunity statute. *Argabrite* at ¶ 9. We find significant that R.C. 2744.03(A)(6)(b) makes no mention of "duty." "When a plaintiff files a civil action against an employee of a

political subdivision, the employee's entitlement to statutory immunity is a separate question from the plaintiff's ability to establish the elements of his or her claim." *Argabrite* at ¶ 10.

**{¶24}** We must follow the legislative dictates of the law. "Ohio courts lack the authority to confer immunity based on a different standard than the General Assembly has implemented." *Argabrite* at ¶ 12. "With R.C. 2744.03(A)(6)(b), the General Assembly 'expressly removed immunity from employees of a political subdivision for wanton or reckless conduct.'" *Argabrite* at ¶ 12, citing *Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, at ¶ 23; *see also Estate of Graves*, 124 Ohio St.3d 339, 2010-Ohio-168, 922 N.E.2d 201, at ¶ 22-23. Accordingly, this appeal is limited to the question of statutory immunity, and we are bound to analyze the case in conformance with the express legislative mandate in R.C. 2744.03(A)(6)(b).

### R.C. 2744.03(A)(6)(b) Immunity Exception

**{¶25}** We disagree with appellants' contention that the trial court granted summary judgment on grounds not specified in appellees' motion for summary judgment. Where a party moves for summary judgment on the basis of political-subdivision immunity under R.C. 2744.03(A)(6)(b), the court must determine "whether, based on the evidence in the record, reasonable minds could conclude that any of the officers acted 'with malicious purpose, in bad faith, or in a wanton or reckless manner' so as to preclude immunity." *See Argabrite,* Slip Opinion No. 2016-Ohio-8374, at ¶ 15. The trial court conducted the

required analysis. Accordingly, we shall review the record to determine whether summary judgment is warranted under R.C. 2744.03(A)(6)(b).

{¶26} To be entitled to immunity under R.C. Chapter 2744 et seq., an employee of a political subdivision must not act with malicious purpose, in bad faith, or in a wanton or reckless manner in connection with the performance of a governmental or proprietary function. *See* R.C. 2744.03(A)(6)(b). The Ohio Supreme Court has recognized, "[a]n officer's role in our society creates a unique lens through which to view his or her actions and through which to determine whether those actions may have been malicious, in bad faith, wanton or reckless." *Argabrite* at ¶ 16. Further, we are cognizant that "the Revised Code purposely provides for a high threshold that must be overcome before an employee of a political subdivision is denied immunity." *Chaney v. Norwood*, 189 Ohio App.3d 124, 2010-Ohio-3434, 937 N.E.2d 634, ¶ 13 (1st Dist.).

{¶27} Appellants contend that reasonable minds could find that appellees carried out their governmental functions relative to the investigation of the December 8, 2008 incident and the release of Sowell, with malicious purpose, in bad faith, or in a wanton or reckless manner so as to preclude immunity. Insofar as the governmental functions relate to appellees' investigative duties, it is well recognized that law enforcement officers have a duty to investigate criminal conduct and to develop and maintain evidence of a crime, and are "charged with the duty to 'prevent crime, preserve the peace, and protect persons and property.'" *State v. Lunder*, 8th Dist. Cuyahoga No. 103653, 2017-Ohio-84, ¶ 18, quoting *State v. Russell*, 127 Ohio App.3d 414, 417, 713 N.E.2d 56

(9th Dist.1998). They also have the statutory duty to arrest and detain a person who is violating the law. *Argabrite* at ¶ 8, citing R.C. 2935.03(A)(1).

**{¶28}** Appellants claim that Det. Hussein, along with Det. Rayburn who assisted her, failed to thoroughly investigate Wade's complaints against Sowell. Appellants claim that Lt. Baumiller and Sgt. McMahan failed to supervise Det. Hussein's investigation of the incident, failed to ensure the incident was thoroughly investigated, and failed to review the results of the investigation. Appellants argue that a reasonable investigation would have shown that probable cause existed to detain and charge Sowell for crimes he committed against Wade. Appellants point to the opinion of their expert, Joseph M. Matthews, who reviewed the conduct of appellees and opined that appellees acted in a reckless and wanton manner and showed a reckless disregard for the safety of others, including appellants and the decedents.[5] Appellants argue that "[h]ad [appellees] conducted a proper investigation, as was done a year later, [the prosecutor] would have had sufficient evidence to pursue criminal charges against Anthony Sowell, and he would have remained in jail," rather than be released and permitted to commit additional violent crimes.

**{¶29}** We shall consider the R.C. 2744.03(A)(6)(b) immunity exception with regard to each of the appellees.

---

[5] Insofar as appellants presented an expert opinion, we recognize that the legal conclusions reached by an expert do not always alter the outcome in a case. *See Johnson v. Cleveland*, 194 Ohio App.3d 355, 2011-Ohio-2152, 956 N.E.2d 355, ¶ 27 (8th Dist.).

**Det. Rayburn**

{¶30} At the time of the investigation of the December 8, 2008 incident, Det. Rayburn was employed in the Crime Scene Unit of the Cleveland Police Department and her job duties included collecting and preserving evidence. Det. Rayburn testified in her deposition that when she receives a request to assist on a case, all she receives is a crime title and any details specific to where she would need to photograph an individual. She testified that she was contacted by Det. Hussein to go to the jail to take photographs of the suspect, Anthony Sowell, and that the following day she was sent to take some additional photographs of Sowell. Det. Rayburn testified that taking these photographs "was my entire involvement" in the case. Upon our review, we find that no reasonable juror could find that Det. Rayburn acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

**Lt. Baumiller and Sgt. McMahan**

{¶31} At the time of the December 8, 2008 incident, Lt. Baumiller was the officer in charge of the Sex Crimes Unit of the Cleveland Police Department. His job required him to "keep the place running well, scheduling, reviewing investigative files, reviewing overtime cards, duty reports, Grand Jury packets" as well as occasional involvement in assisting detectives. Lt. Baumiller assigned the Wade case to Det. Hussein. Lt. Baumiller testified that the detective assigned to a case makes the decision whether the necessary investigative elements are in place to go to the prosecutor.

{¶32} Sgt. McMahan worked as an administrative sergeant in the Sex Crimes Unit. She stated that her job duties involved "handl[ing] the paperwork, the assigning of reports, the reviewing of cases and just general observing [,]" as well as offering guidance to the detectives when they have questions. Sgt. McMahan indicated that the detectives have investigative duties and present the case to the prosecutor after gathering evidence. Her recollection of the case was that it was assigned to Det. Hussein and that Det. Hussein had consulted with the prosecutor. She acknowledged that when closing out the case, she would have reviewed the case to see if anything was lacking. She stated that she would have looked to see if Det. Hussein had interviewed the victim and taken witness statements, and she would have checked for photographs. The record reveals Det. Hussein performed these tasks in the course of her investigation. She indicated that "it's not a review of her investigative techniques[.]" Sgt. McMahan testified that Det. Hussein had informed her that Wade was not happy with the prosecutor's decision not to prosecute, and that Det. Hussein had advised Wade to contact a supervisor if she had concerns, but Sgt. McMahan never received a call from Wade.

{¶33} Undoubtedly, the record raises concerns over the conduct of appellees in their investigation and review of the December 8, 2008 incident. However, insofar as appellants maintain that Lt. Baumiller and Sgt. McMahan failed to adequately supervise and review the investigation, and failed to adhere to departmental policy, this demonstrated negligence at best. "Evidence of a violation of departmental policy does not create a genuine issue of material fact as to whether the violator acted with malicious

purpose, in bad faith or in a wanton or [reckless] manner without evidence that the violator was aware that his 'conduct [would] in all probability result in injury.'" *Argabrite*, Slip Opinion No. 2016-Ohio-8374, at ¶ 25, quoting *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, at paragraph three of the syllabus. There is simply a lack of evidence upon which reasonable minds could find that the conduct of Lt. Baumiller and Sgt. McMahan rose to the level of malicious purpose, in bad faith, or in a wanton or reckless manner as those terms are legally defined.

**Det. Hussein**

**{¶34}** Initially, we conclude that the record contains no evidence that Det. Hussein acted with a malicious purpose, which requires a willful and intentional design to injure or harm another. Likewise, there is no evidence that she acted in bad faith, which requires an ulterior motive or ill will. Our review is focused upon whether there is evidence upon which reasonable minds could find Det. Hussein acted in a wanton or reckless manner. These are "different and distinct degrees of care and are not interchangeable." *Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, at paragraph one of the syllabus.

**{¶35}** "Wanton misconduct" requires a "'failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result.'" *Argabrite*, at ¶ 8, quoting *Anderson* at paragraph three of the syllabus. The record reflects that Det. Hussein conducted an investigation, gathered certain evidence, and presented the case to the prosecutor.

**{¶36}** On December 9, 2008, Det. Hussein was given the investigative assignment for the incident involving Wade. She contacted Wade, interviewed her, and obtained a witness statement. Det. Hussein found there were some inconsistencies with Wade's statement because Wade had indicated she was twice punched in the face, but Det. Hussein did not see any visible bruising to her face. Det. Hussein also found that the initial report indicated the incident involved a sex crime, but Wade stated that the man, who was Sowell, asked her to remove her pants, she said no, and that the man did not do anything sexual to her. The record also reflects that Wade had reported that she had taken soiled underwear off at her sister's house, but that she had it in a bag with her sweatpants when she encountered Sowell.

**{¶37}** On December 10, 2008, Hussein took a statement from Sowell, who offered a different version of events. Det. Hussein also went to the crime scene, though she did not have entry to Sowell's house, and she spoke with witnesses at establishments referenced by Wade in her statement. Det. Hussein checked Sowell's criminal record. She requested Det. Rayburn to take photographs of Sowell. Det. Hussein presented the file of evidence she had gathered to the prosecutor, which included the statements of Wade and Sowell, the offense/incident report that was prepared when Sowell was arrested, and an affidavit addressing robbery signed by Wade.

**{¶38}** Upon this record, no reasonable juror could find "wanton misconduct" since the record fails to evince a "failure to exercise any care."

{¶39} "Reckless conduct" is conduct that is "'characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.'" *Argabrite*, Slip Opinion No. 2016-Ohio-8374, at ¶ 8, quoting *Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, at paragraph four of the syllabus. In considering the term "reckless" under the R.C. 2744.03(A)(6)(b) exception to immunity, the Ohio Supreme Court has also referenced the definition from the Restatement of Torts 2d. *O'Toole*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, at ¶ 73. The Restatement of Torts 2d defines a "reckless disregard of safety" as follows:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

2 Restatement of the Law 2d, Torts, Section 500 (1979).

{¶40} "Distilled to its essence, and in the context of R.C. 2744.03(A)(6)(b), recklessness is a perverse disregard of a known risk." *O'Toole* at ¶ 73. It "necessarily requires something more than mere negligence" and "'the actor must be conscious that his conduct will in all probability result in injury.'" *Id.* at ¶ 74, quoting *Fabrey*, 70 Ohio St.3d at 356, 1994-Ohio-368, 639 N.E.2d 31.

{¶41} In *O'Toole*, the Ohio Supreme Court found that a children services agency and its employees were entitled to immunity in their handling of a case referral of a child who had marks on her body, but was not removed from the home, and subsequently died

from abuse. *Id.* With regard to R.C. 2744.03(A)(6)(b), it was the conduct of the intake supervisor, who determined not to remove the child from the home, that was at issue. *Id.* at ¶ 72. The investigating social worker for the agency had interviewed the child and her mother; she spoke to the child's teacher, the daycare center's nurse, and other necessary parties; she took photographs of the marks on the child; she consulted with the intake supervisor overseeing the case; she prepared a safety plan; and she visited the home. *Id.* at ¶ 13-26. The intake supervisor did not feel he had grounds to remove the child from the home because a safety plan was in place, the home was clean and free of any hazards, a background check on the child's mother came back negative, and the mother appeared to be cooperating. *Id.* at ¶ 76. In considering whether the intake supervisor could be held liable for reckless conduct under R.C. 2744.03(A)(6)(b), the Ohio Supreme Court found that his conduct did not rise to the level of recklessness because the record reflected that he did not perversely ignore a known risk. *Id.* at ¶ 92.

{¶42} The court in *O'Toole* referenced *Hahn v. Wayne Cty. Children Servs.*, 9th Dist. Wayne No. 00CA0029, 2001 Ohio App. LEXIS 2060 (May 9, 2001), which the court indicated was a case with facts that "clearly show what constitutes a perverse disregard of a known risk." *O'Toole*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, at ¶ 90, citing *Hahn*. The court stated that "[t]he evidence in *Hahn* revealed that the agency's employees 'knowingly placed a foster child with a history of sexually abusing younger children with first-time foster parents who had young children, without warning the family about the foster child's deviant sexual behavior.'" *O'Toole* at ¶ 89, quoting

*Hahn* at 14. That foster child then sexually assaulted a seven-year-old child in the Hahns' home. *O'Toole* at ¶ 88, citing *Hahn*.

**{¶43}** Unlike the *O'Toole* case, the record herein contains evidence upon which a reasonable juror could find a perverse disregard of a known risk. Further, similar to *Hahn*, Det. Hussein's conduct was with regard to a known offender.

**{¶44}** Appellants presented evidence that Det. Hussein failed to conduct a thorough investigation. Sowell was arrested on suspicion of having kidnapped, robbed, and attempted to rape Wade. Det. Hussein never spoke to the officers who were at the scene, arrested Sowell, and prepared the offense/incident report. She did not review any physical evidence obtained from the crime scene or review crime-scene photographs, even though they were referenced in the offense/incident report. She never viewed the crime scene after the arrest and did not obtain a search warrant. She never requested Wade's medical records, despite having obtained a medical release authorization from Wade. She never spoke to the manager on duty at the store Wade had been to prior to her attack.

**{¶45}** Also, appellants presented evidence that Det. Hussein failed to provide relevant information to the prosecutor. She did not tell the prosecutor that she had not viewed the crime scene. She did not tell the prosecutor about any physical evidence that had been obtained by the officers during their search of Sowell's house. She did not obtain the crime-scene photographs to present to the prosecutor. She did not present photographs of Wade's injuries or inform the prosecutor that Wade's thumb had been cut

by broken glass from a door in Sowell's house. She did not present any photographs relative to Sowell. Det. Hussein prepared an affidavit for robbery only, signed by Wade, that she presented to the prosecutor. She told the prosecutor she had concerns about inconsistencies in Wade's statements. She failed to inform the prosecutor of Sowell's status as a convicted felon for attempted rape, and she did not recall informing the prosecutor that Sowell was a registered sex offender. She did not believe the information was relevant. On the felony review form, the prosecutor determined there was "insufficient evidence" and that the victim was "not credible."

{¶46} Further, appellants presented evidence to show Det. Hussein acted with knowledge of risk. Det. Hussein was aware of Sowell's prior conviction and his status as a registered sex offender. On December 9, 2008, she made a first request to hold Sowell in custody for an additional 24 hours so that she could conduct further investigation. She made a second request to hold Sowell in custody for an additional 24 hours after she met with the prosecutor and Sowell had been released from jail. She then visited Sowell at his house and observed that the glass on the door had been broken. However, she did not provide any new information to the prosecutor or report anything regarding her visit.

{¶47} Viewing the evidence in a light most favorable to appellants, we find that reasonable minds could conclude that Det. Hussein acted in a reckless manner. Therefore, as to Det. Hussein only, summary judgment on the basis of immunity was not warranted.

**CONCLUSION**

**{¶48}** Unless the Ohio Supreme Court determines otherwise, we do not consider traditional tort concepts of "duty" in the context of the immunity analysis under R.C. 2744.03(A)(6). We shall continue to follow the express legislative dictate in R.C. 2744.03(A)(6)(b) that precludes immunity for an employee of a political subdivision who engages in wanton or reckless conduct in connection with a governmental or proprietary function.

**{¶49}** As to Det. Hussein only, we reverse the decision of the trial court and conclude that summary judgment on the basis of immunity is not warranted because, from the evidence in the record, reasonable minds could conclude that Det. Hussein acted in a reckless manner. We affirm the trial court's decision to grant summary judgment to the remaining appellees because there is no evidence that these officers acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

**{¶50}** Additionally, we note that in each of the underlying complaints, the assistant prosecutor named in the action was misidentified as "Loretta" Coyne, rather than properly identifying Lorraine Coyne as a defendant in the actions. Also, Attorney Loretta Coyne's business address was improperly used. The dockets reflect repeated misidentifications of said defendant, who has since been dismissed from the case. Upon remand, the trial court and counsel are instructed to correct the record with the clerk of court.

**{¶51}** Judgment affirmed in part, reversed in part; case remanded.

It is ordered that appellants and appellees share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
EILEEN A. GALLAGHER, J., CONCUR