[Cite as *Parra v. Jackson*, 2021-Ohio-1188.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ANDREA PARA, INDIVIDUALLY    :
AND AS ADMINISTRATOR,

                          :         No. 109516

     Plaintiff-Appellee,

                          :

     v.

                          :

FRANK G. JACKSON, ET AL.,

                          :

     Defendants.

                           :

[Appeal by Calvin D. Williams]

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 8, 2021

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Case No. CV-19-924682

---

### *Appearances:*

The Pattakos Law Firm L.L.C., Peter Pattakos, and Rachel Hazelet, *for appellee.*

Barbara A. Langhenry, Cleveland Director of Law, and William M. Menzalora, Chief Assistant Law Director, and Timothy J. Puin, Assistant Law Director, *for appellant.*

MICHELLE J. SHEEHAN, P.J.:

**{¶ 1}** Plaintiff-appellee Andrea Parra's son, Antonio Parra, was fatally shot when he stood outside a barbershop in Cleveland's Clark-Fulton neighborhood. After the shooting, the two gunmen fled the scene in a vehicle registered to Frank Q. Jackson, a grandson of Cleveland Mayor Frank G. Jackson. Andrea Parra ("plaintiff" hereafter) filed a complaint against Mayor Jackson and Calvin D. Williams, Cleveland Police Chief, alleging the gunmen responsible for her son's murder were gang members affiliated with Mayor Jackson's grandsons and he and Chief Williams used their public office to obstruct the investigation of the mayor's grandsons' criminal activities, including Antonio Parra's murder. This appeal is limited to a review of the trial court's decision denying Chief Williams's Civ.R. 12(B)(6) motion to dismiss plaintiff's claims against him in his personal capacity on the basis of immunity. For the following reasons, we affirm the trial court's judgment.

**The Complaint**

**{¶ 2}** On November 7, 2019, Andrea Parra, individually and as the administrator of her son's estate, filed a complaint against Mayor Jackson, in his personal and official capacity as the mayor of the city of Cleveland, and Chief Williams, in his personal and official capacity as the chief of the Cleveland Police Department. The complaint raised three claims: wrongful death (Count 1) against Mayor Jackson and intentional infliction of emotional distress (Count 2) and obstruction of justice (Count 3) against both defendants.

{¶ 3} According to the complaint, around 4:30 p.m. on August 28, 2019, while Antonio Parra stood outside a barber shop on Clark Avenue, two men approached him and, without any provocation, shot him multiple times with handguns. The two men fled in a Volkswagen Passat. Antonio Parra was pronounced dead at the scene.

{¶ 4} Based on the license plate number witnesses provided to the police, the police determined that the vehicle was registered to Frank Q. Jackson, Mayor Jackson's grandson. Several police officers went to the mayor's residence shortly afterward to investigate the homicide. They found the mayor, Frank Q. Jackson, and an unidentified juvenile there. The police took the unidentified juvenile into custody but not Frank Q. Jackson. According to plaintiff, the police never questioned Frank Q. Jackson or performed a gunshot residue test on him after Mayor Jackson told the police officers that his grandson would not answer their questions. The mayor allegedly also told the police officers not to use their body cameras while in his residence. Plaintiff alleged this was a deviation from the police department policy regarding the use of body cameras and also that this was not the first time the police failed to comply with the body camera policy in its investigation of prior criminal incidents involving Frank Q. Jackson.

{¶ 5} According to the allegations in the complaint, which were primarily based on media accounts from Cleveland.com, Cleveland 19 News, and News 5 Cleveland, Frank Q. Jackson is a leader of the "No Limit-700 Gang." He and the mayor's 16-year-old great-grandson, also a member of the gang — together referred

to as the mayor's "grandsons" in the complaint — have an extensive history of gang-related criminal activities.   Mayor Jackson was aware of the criminal activities but used the influence of his public office to obstruct the investigation of these criminal activities.   The complaint further alleged that Parra was murdered by two men "believed to be affiliated with the Mayor's grandsons" and they committed the murder to gain favor with the mayor's grandsons and to increase their status in the gang.

{¶ 6} The complaint alleged that the Volkswagen Passat seen fleeing the scene after the murder was set on fire in a location 2.5 miles from the mayor's residence. While Frank Q. Jackson told the police he sold the vehicle prior to August 28, 2019, no record of the sale had been produced and Frank Q. Jackson was cited for a traffic violation while driving the vehicle as recently as August 13, 2019.

{¶ 7} The complaint alleged that Mayor Jackson and Chief Williams, who serves at the pleasure of the mayor and has exclusive control of the police force, "exacerbated the harm resulting from Parra's murder by obstructing its investigation."   It alleged that "[a]t the Mayor's instruction," Cleveland police failed, in its investigation immediately following the shooting, to question Frank Q. Jackson, conduct a gunshot residue test on him, take him into custody, or record the officers' interactions with the Jacksons on their body camera while at the mayor's residence, despite the requirements of established departmental policies and procedures.

{¶ 8} According to the complaint, on September 10, 2019, the county prosecutor's office issued a statement confirming Frank Q. Jackson being a "prime suspect" in Antonio Parra's murder. Despite the pressure from the community, including the county prosecutor and members of Cleveland City Council, Mayor Jackson and Chief Williams have refused to appoint an independent agency to investigate the murder. Chief Williams allegedly told reporters, "Why fix something that is not broken?"

{¶ 9} Regarding the claim of wrongful death against Mayor Jackson, plaintiff alleged that, two months before Parra's murder, Frank Q. Jackson violently assaulted an 18-year-old woman, as witnessed by two people, but the city prosecutor failed to pursue charges for the assault or refer the matter to the county prosecutor. While the grand jury eventually indicted Frank Q. Jackson for felonious assault sometime after the murder, plaintiff alleged that had the mayor not "interfered with, obstructed, or otherwise failed to ensure the prosecution of his grandson" for the assault incident, Frank Q. Jackson would have been immediately prosecuted for the crime. Plaintiff alleged that Antonio Parra's murder "was a foreseeable result of the Mayor's intentional obstruction of justice in cases involving his grandsons." Plaintiff stated that "[t]he culture of impunity fostered by the Mayor with respect to his grandsons' criminal conduct culminated in" Parra's murder. She maintained that Mayor Jackson knew or should have known that the city's deviation from established police procedures in cases involving his grandsons would cause them

and their affiliates to continue to engage in violent crime, believing they could do so with impunity.

{¶ 10} While the wrongful death claim against Mayor Jackson was premised on the allegation that Parra's murder was committed by individuals who were "affiliated with" the mayor's grandsons and "the culture of immunity" fostered by him culminated in Parra's murder, the claims of intentional infliction of emotional distress and obstruction of justice against both Mayor Jackson and Chief Williams related to their alleged cover up regarding Parra's murder to protect Mayor Jackson's grandsons. Plaintiff alleged that "[t]he anomalies and deviations from established policies and procedures in the Cleveland Police Department's investigation of Parra's murder * * * were the result of intentional conduct by the Defendants, including the Mayor's explicit and implicit instructions to the Police Department," which is undertaken to "shield the Mayor and his administration from public scrutiny and to shield the Mayor's relatives from liability for their criminal conduct." Plaintiff alleged the defendants engaged in the conduct "with conscious disregard of the rights of Mr. Parra, his kin, and his estate, and with certainty of inflicting severe harm on them."

{¶ 11} Plaintiff alleged that she was entitled to relief for her claim of intentional infliction of emotional distress because the mayor or police chief's intentional obstruction of a murder investigation to further their own personal ends constituted "extreme and outrageous conduct that is utterly intolerable in a civilized community." Plaintiff alleged she suffered anxiety, depression, and posttraumatic

stress disorder as a proximate result of the defendants' conduct. Similarly, she claimed she was entitled to relief for her claim of obstruction of justice, for which compensatory damages are available pursuant to R.C. 2307.60.

**Chief Williams's Motion to Dismiss and the Instant Appeal**

{¶ 12} In response to plaintiff's complaint, Chief Williams filed a Civ.R. 12(B)(6) motion to dismiss for a failure to state a claim upon which relief could be granted. He argued that the plaintiff's complaint failed to plead sufficient facts to avoid statutory immunity he is entitled to under R.C. Chapter 2744 in both his official and personal capacity. Chief Williams further argued that the complaint failed to sufficiently plead the elements to establish a cause of action of intentional infliction of emotional distress and obstruction of justice against him.

{¶ 13} Plaintiff filed a notice stating that she did not contest a dismissal of her claims against Chief Williams in his official capacity. The trial court then issued a decision granting Chief Williams's motion to dismiss the claims against him in his official capacity but denying his motion to dismiss the claims against him in his personal capacity. Williams now appeals.[1]

{¶ 14} William assigns the following error for our review:

> The trial court erred in denying in part the motion to dismiss of Appellant-Defendant Calvin D. Williams because none of the exceptions to immunity from suit under the Ohio Political Subdivision

---

[1] Mayor Jackson also filed a Civ.R. 12(B)(6) motion to dismiss. The trial court similarly granted his motion to dismiss the claims against him in his official capacity but denied the motion to dismiss the claims against him in his personal capacity. Mayor Jackson did not appeal from the trial court's decision.

Tort Liability Act, R.C. 2744.03(A)(6)(b) apply to the claims of Appellee-plaintiff against Chief Williams in his personal capacity.

{¶ 15} R.C. Chapter 2744 governs the immunity of political subdivisions and their employees.  When analyzing the immunity of a political subdivision, R.C. 2744.02 applies and the court engages in a three-tier analysis set forth in that statute.  *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585, ¶ 8.  When analyzing the immunity of an employee of a political subdivision, instead of the three-tier analysis, R.C. 2744.03(A)(6) applies.  *Id.* at ¶ 10.

{¶ 16} Furthermore, where a named defendant officer of a political subdivision is sued in his or her official capacity, R.C. 2744.02 applies; where the employee is sued in his or her personal capacity, R.C. 2744.03(A)(6) applies.  *Jones v. Norwood*, 1st Dist. Hamilton No. C-120237, 2013-Ohio-350 ¶ 37.  Because this appeal only concerns the trial court's denial of Chief Williams's motion to dismiss the claims against him in his personal capacity, the only issue before us is whether R.C. 2744.03(A)(6) applies to remove immunity from Chief Williams regarding plaintiffs' claims of intentional infliction of emotional distress and obstruction of justice.

**Civ.R. 12(B)(6) Motion to Dismiss**

{¶ 17} A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim tests the sufficiency of a complaint. *Assn. for Defense of Washington Local School Dist. v. Kiger,* 42 Ohio St.3d 116, 537 N.E.2d 1292 (1989).  The Civ.R. 12(B)(6) dismissal of a complaint for failure to state a claim upon which relief can be granted is

appropriate if, after presuming the truth of all factual allegations of the complaint and making all reasonable inferences in a nonmoving party's favor, it appears beyond doubt that the nonmoving party could prove no set of facts entitling the moving party to the requested relief. *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, ¶ 13. In considering a Civ.R. 12(B)(6) motion to dismiss, the court is limited to the four corners of the complaint. *Thompson v. Cent. Ohio Cellular, Inc.*, 93 Ohio App.3d 530, 639 N.E.2d 462 (8th Dist.1994). Finally, as pertinent to this case, the affirmative defense of immunity under R.C. Chapter 2744 may be the basis of a dismissal under Civ.R. 12(B)(6). *Main v. Lima*, 3d Dist. Allen No. 1-14-42, 2015-Ohio-2572, ¶ 15.

{¶ 18} On appeal, our review of the trial court's decision regarding a Civ.R. 12(B)(6) motion is de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44.

{¶ 19} Ordinarily, the denial of a Civ.R. 12(B)(6) motion is not a final appealable order. However, R.C. 2744.02(C) provides that "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." When the trial court denies a motion to dismiss where the motion was predicated on political subdivision immunity under R.C. Chapter 2744, the judgment is a final appealable order. *DiGiorgio v. Cleveland*, 196 Ohio App.3d 575, 2011-Ohio-5824, 964 N.E.2d 495, ¶ 11 (8th Dist.), citing *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878.

**Analysis**

{¶ 20} R.C. 2744.03(A)(6) establishes the framework of analysis for determining whether a political subdivision employee is entitled to immunity. It provides that an employee of a political subdivision is immune from tort liability, with three exceptions. The exceptions to immunity per the statute are set forth as follows:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

{¶ 21} Malicious conduct is conduct "'indulging or exercising malice; harboring ill will or enmity.'" *Jackson v. Butler Cty. Bd. of Cty. Commrs.*, 76 Ohio App.3d 448, 453, 602 N.E.2d 363 (12th Dist.1991), quoting *Teramano v. Teramano*, Ohio St.2d 117, 118, 216 N.E.2d 375 (1996). "Malice" can also be defined as "the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Id.* at 453-454, citing *Bush v. Kelleys, Inc.*, 18 Ohio St.2d 89, 247 N.E.2d 745 (1969). "Bad faith" connotes a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Jackson v. McDonald*, 144 Ohio App.3d 301, 309, 760 N.E.2d 24 (5th Dist.2001).

{¶ 22} "Wanton" misconduct is "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St. 3d 380, 2012-Ohio-5711, 983 N.E.2d 266, paragraph three of the syllabus. "Reckless" conduct is conduct characterized by "the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus.

{¶ 23} The parties agree on appeal that the complaint did not allege Chief Williams acted "manifestly outside the scope of" his employment or liability is expressly imposed on him by a section of the Revised Code. The only issue on appeal is whether the complaint contained sufficient factual allegations pursuant to R.C. 2744.03(A)(6)(b) to survive Chief Williams's motion to dismiss based on immunity.

{¶ 24} Chief Williams asserts on appeal that the only specific allegation made specifically against him in the complaint was his refusal to appoint an independent investigation by an outside agency for Parra's murder. He claims he has no duty under the law nor authority under Cleveland's Charter to appoint an independent investigator. He argues furthermore that this allegation, even if true, does not rise to the level of malice, bad faith, wanton conduct, or recklessness. He also claims that plaintiff's allegation that the police department conducted a deficient investigation of the murder "at the Mayor's instruction" did not specifically allege that he himself played a role in the deficient investigation.

{¶ 25} Regarding Chief Williams's argument that he has no duty to appoint an independent investigator, this court has noted that in the context of immunity analysis for a political subdivision employee, we do not consider traditional tort concepts of "duty" but only apply the statutory provision in R.C. 2744.03(A)(6)(b), which precludes immunity if the employee's conduct is with malicious purpose, in bad faith, or in a wanton or reckless manner. *Moore v. Cleveland*, 2017-Ohio-1156, 87 N.E.3d 858, ¶ 48 (8th Dist.). As to Williams's assertion that Cleveland's Charter does not empower him to appoint an independent investigator, our review of a motion to dismiss is limited to the four corners of the complaint and whether Chief Williams has such authority is a matter outside the complaint.

{¶ 26} While Chief Williams argues that the only specific allegation in the complaint regarding his action or omission is his failure to appoint an independent prosecutor, our reading of the complaint reflects otherwise. The allegation regarding Chief Williams's failure to appoint an independent investigator was part of the more general allegations that he (and Mayor Jackson) intentionally obstructed the investigation of the Parra murder, upon which plaintiff's claims for intentional infliction of emotional distress and obstruction of justice were predicated. The complaint alleged there were "anomalies and deviations from standard policies and procedures" in the police department's investigation of Antonio Parra's murder that "were the result of intentional conduct by the Defendants" and undertaken "with conscious disregard of the rights of Mr. Parra, his kin and his estate, and with certainty of inflicting sever harm on them" to cover up the involvement of Mayor

Jackson's grandsons. The failure to appoint an independent investigator is not the only allegation made against Chief Williams, the person in control of the police department.

{¶ 27} Regarding Chief Williams's assertion that the allegations were not specific enough to sufficiently allege malice, bad faith, or wanton or reckless conduct, we note that in Ohio, under notice pleading, a plaintiff is not required to prove his or her case at the pleading stage. *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-145, 573 N.E.2d 1063 (1991). Civ.R. 8(A)(1) requires only "a short and plain statement of the claim showing that the party is entitled to relief." As the Supreme Court of Ohio explained:

> Very often, the evidence necessary for a plaintiff to prevail is not obtained until the plaintiff is able to discover materials in the defendant's possession. If the plaintiff were required to prove his or her case in the complaint, many valid claims would be dismissed because of the plaintiff's lack of access to relevant evidence. Consequently, as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.

*York* at 145.

{¶ 28} While a plaintiff must plead the operative facts with particularity in some cases, the plaintiff in a sovereign immunity case does not. *David v. Matter*, 2017-Ohio-7351, 96 N.E.3d 1012, ¶ 8 (6th Dist.). "Under the rubric of notice pleading, a plaintiff has no obligation to anticipate the assertion of an affirmative defense and allege facts to disprove that defense in its complaint." *DSS Servs., L.L.C. v. Eitel's Towing, L.L.C.*, 10th Dist. Franklin No. 18AP-567, 2019-Ohio-3158, ¶ 10.

"'[A] plaintiff need not affirmatively dispose of the immunity question altogether at the pleading stage.'" *DSS Servs.* at ¶ 11, quoting *Scott v. Columbus Dept. of Pub. Utils.*, 192 Ohio App.3d 465, 2011-Ohio-677, 949 N.E.2d 552, ¶ 8 (10th Dist.). *See also Carswell v. Akron*, 9th Dist. Summit No. 29321, 2019-Ohio-4444, ¶ 13-14 (there is no heightened pleading requirement that would require the plaintiff to allege specific exceptions to immunity when bringing suit against a political subdivision; such a plaintiff is under no obligation to prove his or her case regarding immunity in the initial pleadings). In addition, we note that Civ.R. 9, which addresses pleading of matters involving state of mind, provides that while the averments of fraud and mistake shall be stated with particularity, "malice, intent, knowledge, and other condition of mind of a person may be averred generally." *See Parmertor v. Chardon Local Schools*, 2016-Ohio-761, 47 N.E.3d 942, ¶ 49-50 (11th Dist.) (the public subdivision employees' contention that the complaint against them did not allege specific facts to show they were not immune under R.C. 2744.03(A)(6)(b) lacks merit pursuant to Civ.R. 9).

{¶ 29} Applying the law applicable to Chief Williams's motion to dismiss based on his claim of immunity as a political subdivision employee, we are not convinced that, after presuming all the factual allegations to be true and making all reasonable inferences in plaintiff's favor, plaintiff could prove no set of facts to show Chief Williams acted with malicious purpose, in bad faith, or in a wanton or reckless

manner relating to the investigation of Antonio Parra's murder.[2]   A dismissal would be premature at this stage of the proceedings.

{¶ 30} We emphasize that an "employee's entitlement to statutory immunity is a separate question from the plaintiff's ability to establish the elements of his or her claim." *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 10.   In the instant appeal, we only resolve the question of whether plaintiff's complaint survives Chief Williams's Civ.R. 12(B)(6) motion to dismiss pursuant to R.C. 2744.03(A)(6)(b).  We express no opinion on whether plaintiff could ultimately prove the elements of the claims of intentional infliction of emotional distress or obstruction of justice alleged against Chief Williams.[3]   Our resolution of the

---

[2]  Chief Williams also argues that even if the allegations were deemed sufficiently specific, the complaint was premised on the speculation that Mayor Jackson's grandsons were connected to Antonio Parra's murder.  He argues that because the allegation that he acted with malice, in bad faith, or in a wanton or reckless manner was premised on the mere speculation regarding the identity of the perpetrators, his motion to dismiss must be granted.   This claim lacks merit because plaintiff's claims of intentional infliction of emotional distress and obstruction of justice, unlike the wrongful death claims, do not depend on the identity of the perpetrators.  These claims relate to the alleged obstruction of the murder investigation by the police department and are independent of the wrongful death claim.

[3] To recover on an action for intentional infliction of emotional distress, a plaintiff must prove:

> 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community," Restatement of Torts 2d (1965) 73, Section 46, comment d; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it," Restatement of Torts 2d 77, Section 46, comment j.

immunity question is not be construed to reflect on the strength or weakness of plaintiff's claims against Chief Williams beyond the narrow context of his motion to dismiss predicated on immunity of a political subdivision employee.

{¶ 31} The assignment of error is without merit, and the trial court's judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
LISA B. FORBES, J., CONCUR

_____

*Pyle v. Pyle*, 11 Ohio App.3d 31, 34, 463 N.E.2d 98 (8th Dist.1983).    Regarding obstruction of justice, R.C. 2921.32(A) states that

> [n]o person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime or to assist another to benefit from the commission of a crime * * * shall * * * [p]revent or obstruct any person, by means of force, intimidation, or deception, from performing any act to aid in the discovery, apprehension, or prosecution of the other person * * *.

Plaintiff cites R.C. 2307.60, which governs civil recovery for a criminal act, for her entitlement to damages pursuant to R.C. 2921.32(A).